### CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILROAD COMPANY, Appellant,

v.

### James Lloyd UNDERWOOD, Appellee.

No. 13461.

United States Court of Appeals
Sixth Circuit.

Dec. 9, 1958.

Clyde W. Key, of Key & Lee, Knoxville, Tenn., Howard H. Baker, Jr., of Baker & Baker, Huntsville, Tenn. (Whitaker, Hall & Haynes, Chattanooga, Tenn., on the brief), for appellant.

Stuart F. Dye, of Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn. (George H. Buxton, Jr., Harry Joyce, Wartburg, Tenn., on the brief), for appellee.

Before ALLEN, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This is an appeal by the Cincinnati, New Orleans and Texas Pacific Railroad Company, defendant in the district court, from a judgment entered on the verdict of a jury for $18,000 damages for personal injuries, consisting in the main of "contact dermatitis."

The appellee, Underwood, long had been in the service of the carrier, having entered its employ in April of 1928. He worked for appellant continuously until January 15, 1955, with only one lay-off of three months during the first year of his employment and one of two months during 1947, when he underwent surgery for the removal of a kidney.

In overruling the motion of appellant for judgment *non obstante veredicto*, the trial judge, in his opinion-order, summarized the basis of liability and pointed by page references to the record, which showed substantial evidence on which the

jury verdict was based. The court stated that the defendant had been negligent in its failure to furnish the plaintiff a safe place to work and safe equipment with which to work and that the plaintiff had sustained injury in the nature of "contact dermatitis" as the result of exposure to creosote and other chemicals regularly used by the defendant-appellant. The court asserted, further, that the appellant railroad was chargeable with notice of its use of creosote and other chemicals in connection with work in track maintenance and knew the injurious character thereof to track maintenance employees, including appellee. Notwithstanding this, appellant furnished its employees, including appellee, with "insufficient protective clothing" and other safety devices. The court held that, with full knowledge of appellee's injured condition from exposure to creosote, appellant negligently required him to return to work under the same conditions which had injured him without providing him with any protection against renewal and aggravation of his injuries.

The court found that the verdict of the jury was supported by substantial evidence of appellant's negligence in the particulars enumerated. Special attention was directed to the testimony of the doctor employed by appellant, who said: "After it was discovered he [appellee] was sensitive to Diesel fuel when walking along the tracks where this stuff was sprinkled, he was ordered to go back to work or else, or certain other measures would be taken. He would lose his pension benefits and similar things. This was confidential information I received from the patient." Accordingly, the district judge overruled the motion of appellant for a judgment *non obstante veredicto*.

We are in accord with the ruling and are of opinion that the judgment entered on the verdict of the jury should be upheld.

■ Orderly arrangement indicates discussion, first, of the law pertaining to an occupational disease such as "contact dermatitis," to be followed by a brief survey of facts in the instant case.

In Urie v. Thompson, 337 U.S. 163, 186, 187, 69 S.Ct. 1018, 1033, 93 L.Ed. 1282, the Supreme Court held that the coverage of the Federal Employers' Liability Act is not confined to injuries resulting from accidents, but includes injuries in the nature of occupational diseases, such as silicosis. The following language in the opinion seems directly applicable to the instant case: "In our view, when the employer's negligence impairs or destroys an employee's health by requiring him to work under conditions likely to bring about such harmful consequences, the injury to the employee is just as great when it follows, often inevitably, from a carrier's negligent course pursued over an extended period of time as when it comes with the suddenness of lightning. Silicosis is as much 'injury,' leading in time as certainly to permanent disability, as scalding from a boiler's explosion. We do not think the mere difference in the time required for different acts of negligence to take effect and disclose their harmful, disabling consequences would justify excluding the one type of injury from the Act's coverage or that such an exclusion would be consistent with its language, purposes, or unvarying standards of construction." The same reasoning as to silicosis would apply to contact dermatitis.

In the light of the language of Mr. Justice Rutledge, just quoted, we think it well to quote a pertinent portion of the Federal Employers' Liability Act, itself, which provides in section I: "Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other

equipment." 45 U.S.C.A. § 51. See Young v. Pennsylvania R. Co., 2 Cir., 197 F.2d 727, wherein the United States Court of Appeals upheld a judgment for damages in a "contact dermatitis" case brought under the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.].

The highest court recently has expressed very strong convictions concerning the right to a jury determination in a case brought under the Federal Employers' Liability Act. In its opinion in Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506, 509, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, Mr. Justice Brennan said: "Under this statute the test of a jury case is simply whether the proof justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. * * * Cognizant of the duty to effectuate the intention of the Congress to secure the right to a jury determination, this Court is vigilant to exercise its power of review in any case where it appears that the litigants have been improperly deprived of that determination."

A short résumé of the evidence will demonstrate that this case falls squarely within the principles of the foregoing authorities, indicating plainly that the judgment on the jury verdict should be upheld.

During his long period of service with the appellant railroad company, the appellee worked as a section laborer until 1941 or 1942, when he became a foreman with the responsibility of overseeing a general track-maintenance crew. In early March of 1954, appellee for the first time suffered skin irritation, with itching and burning, and with swelling over his entire body but pronouncedly around his eyes. These symptoms developed the day following his not unusual custom of warming himself beside a pile of burning railroad ties. Shortly thereafter, he consulted Dr. Jones, who was both his family physician and the appellant's local doctor. After receiving extensive treatment by Dr. Jones, he was sent by that doctor to a Dr. Grubb who was a specialist in allergy. Appellee was committed to a hospital where an attempt was made to desensitize him. Both Dr. Jones and Dr. Grubb were of opinion that the appellee was extremely sensitive to creosote and its allied products. Indeed, Dr. Grubb made the diagnosis that appellee suffered from "contact dermatitis due to creosote."

Appellee testified that Dr. Grubb told him to go back to work and see if working "bothered" him. He followed instructions, at the same time taking medicines prescribed for him; but he was plagued with eruptions until at length his physical condition forced him to go home. He suffered a generalized eruption over his body identical with the symptoms following his first attack. He stated that the itching at times was so painful that he could not stay in bed. He did not return to work until December 20, 1954, when he did so under instruction of his doctors. His skin irritation recurred, forcing him to stop working on January 15, 1955. Thereafter, at the suggestion of Dr. Grubb, the appellee simply walked along the right-of-way without performing any labor. The following day, his face became swollen, his eyes were swollen shut, and eruptions broke out over his entire body.

Appellee testified that since the first attack of his skin disease he has never been entirely free of it. He stated that he had seen "lots" of others working under the same conditions as he who were blistered or burned. He was corroborated by several witnesses. Chester Galloway, a laborer, testified that he had seen railroad ties dripping with creosote and that he, himself, had been burned on his face and hands sufficiently to cause the skin to peel off a number of times; another laborer who had worked for the appellant company, Thurman Alley, swore that he had been handling creosote-soaked ties for some twenty years and that the effect on him and other similarly situated employees had been a skin burning for some thirty-six hours or more after contact; and that, when the outer

skin peeled off, improvement had been noted. Another railroad track laborer, Levi Kreis, gave testimony that he had worked for appellant over 28 years and had handled creosote ties, that he had known lots of workers to be affected with burning by creosote; and that he, himself, while working as a foreman, became affected by it. He said that the smoke from burning creosote ties has a blistering effect. He stated further that he had never been furnished by the railroad company with any particular type of gloves or any kind of ointment.

From the foregoing short analysis of the facts of record, we think it clear that there is substantial evidence to support the jury verdict upon which the judgment for appellee is properly grounded.

Accordingly, the judgment of the district court is affirmed.