Ralph Gilmore, Plaintiff-Appellee, v. Toledo, Peoria & Western Railroad Company, a Corporation, Defendant-Appellant.

Gen. No. 64–43.

Third District.

October 29, 1965.

Rehearing denied December 9, 1965.

Cassidy & Cassidy, of Peoria, for appellant.

James A. Dooley, of Chicago, and Robert E. Kavanaugh, of Peoria, for appellee.

STOUDER, J.

This is an appeal from a judgment of the Circuit Court of Peoria County in the amount of $66,650 entered pursuant to the verdict of a jury. Appellee instituted his action against Appellant for damages for personal injuries against the Appellant under the provisions of the Federal Employers Liability Act, Title 45 US Code (Railroads). From a verdict and judgment in favor of the Appellee, Appellant appeals to this Court. Both parties agree that the FELA governs the rights and liabilities of the parties hereto.

Appellee, an employee of the Appellant railroad for many years, assumed the duties of track patroller in 1952. His duties involved patrolling the track of Appellant in a small gasoline operated car for the purpose of inspecting the track and other matters related thereto. On November 27, 1957, a clear day, Appellee was patrolling

an eleven mile section of Appellant's track running generally north and south between LaHarpe and Lomax, Illinois. At about 2 p. m., while proceeding in a northerly direction in his patrol car, at a point approximately five to six hundred feet north of an intersection of the track and a gravel road the Appellee approached the crest of an upgrade. Hearing a "clatter" made by the wheels of his car, then traveling at about 15 miles per hour, he turned his head in a southerly direction and observed that a raised weld had caused the noise. After turning his head toward the direction in which he was traveling he observed an object on the track in front of him on the reverse side of the crest of the grade but was unable to stop before the car struck the object, derailing the car and throwing Appellee to the ground. Appellee was unable to move and he lay at the scene of the mishap approximately one and one half hours before he was discovered by a group of three boys and a minister who had come to the area for the purpose of getting wood and hunting. It appeared that the objects which had been placed on one side of the track were used rail anchors. The evidence further showed that approximately three weeks prior to the mishap, employees of the Appellant had replaced a four mile section of track in the area involved and that spikes, rail anchors and metal pieces were on the right of way near the tracks in the area where the mishap occurred. It also appeared from the evidence that the area was not posted against trespassers and that it was used by hunters. There was no evidence introduced as to the identity of the person placing the objects on the track.

Appellant appeals from the denial of its motions for a directed verdict at the close of Plaintiff's evidence and at the close of all the evidence and also from the denial of its post-trial motions for a new trial and for judgment notwithstanding the verdict.

■■ Appellant contends that the trial court erred in permitting Appellee to amend his complaint at the close of all the evidence by deleting the allegations in the complaint dealing with proximate cause. It appears from Appellant's voluminous brief, to be his contention that pleadings may be amended at the close of the evidence only to conform such pleadings to the proof. Section 46 of the CPA does not agree. Section 46 states unequivocally that "At any time before final judgment amendments may be allowed on just and reasonable terms, . . . changing the cause of action . . . or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought. . . ." This section has been declared by the courts to be very broad, necessitating a liberal construction in the absence of any showing of prejudice to defendant. Shockley v. Good, 13 Ill2d 298, 148 NE2d 763, Hinchcliffe v. Wenig Teaming Co., 274 Ill 417, 113 NE2d 707, Donnelly v. Pennsylvania R. Co., 342 Ill App 556, 97 NE2d 846, May v. Diconto Gesellschaft, 211 Ill 310, 71 NE 1001, and McGlaughlin v. Pickerel, 381 Ill 574, 46 NE2d 368. The record does not demonstrate nor does the Appellant argue that the amendment was prejudicial in any way.

■ Appellant also argues that deleting the allegations of proximate causation are fatal to Appellee's cause of action and we must assume from this that Appellant considers proximate cause, in the sense of being a sole, efficient producing cause of the injury, to be a necessary ingredient of an action under the FELA. Again, the Act, Title 45 US Code (Railroads) Sec 51, itself does not support this contention. The Federal Employer's Liability Act says "that the railroad . . . shall be liable in damages for injuries to an employee resulting in whole or in part from the negligence of any of (its) officers, agents or servants. . . ." The Supreme Court of the United States in Rogers v. Missouri Pacific R. R., 352 US 500 interpreting this section has held "The Missouri

court's opinion implies its view that this is the governing standard by saying that the proofs must show that the injury would not have occurred but for the negligence of his employer, and that the test of whether there is causal connection is that, absent the negligent act the injury would not have occurred. That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." . . . "The law was enacted because the Congress was dissatisfied with the common law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."

■ ■ Appellant further argues that the evidence in the instant case, as a matter of law, shows no negligence on the part of the railroad company. In support of this argument Appellant contends that the nature of Appellee's employment was such that it was his duty

223

to discover and report the very condition which gave rise to the injury complained of. The evidence is undisputed that it was Appellee's duty to inspect the rails, ties and shoulders of the right of way, bridges and low places and to submit to his employer written reports as to the condition of the right of way. There was no suggestion that it was any part of Appellee's duty to clean up after a repair crew. There was also evidence, submitted by Appellee and uncontroverted by Appellant, that in performance of these duties and while riding on the tracks, he turned his head to determine the source of an unusual noise emanating from the contact of the wheels on the track. In so doing, Appellee testified that he did not see the rail anchor lying on the tracks ahead of him in time to stop. Appellee's testimony that looking back to determine the source of this unusual noise was the usual and customary manner of performing his duties was corroborated by other witnesses. The combined total of all this evidence produced a question of fact which was properly submitted to the jury. To say as a matter of law, that in performing a part of his duties Appellee's failure to give his attention to another part at the same instant relieved the railroad from its responsibilities, would ignore the doctrine propounded by the U. S. Supreme Court in Rogers v. Missouri Pacific R. R. Co., supra. The Rogers case involved an FELA action where the employee petitioner was assigned to burn weeds and vegetation from the railroad right of way. In addition petitioner was instructed by his foreman to stop what he was doing when a train passed, take a position off the tracks and watch for hotboxes. Petitioner, having started the burning operation, heard the whistle of an approaching train and took a position where he could observe this train. The passing train fanned the flames of the burning vegetation and carried the fire to petitioner who, in attempting to escape, fell and was seriously injured. The railroad Co. argued that

petitioner's primary duty was attending the fire and that his inattention to the fire was the real and immediate cause of the injury. The Supreme Court there said ". . . when petitioner agreed that his primary duty was to watch the fire he did not also say that he was relieved of the duty to stop to watch a passing train for hotboxes. Indeed no witness testified that the instruction was countermanded. At best, uncertainty as to the fact arises from petitioner's testimony, and in that circumstance not the court, but the jury was the tribunal to determine the fact."

■■■■ The evidence shows that the cause of the derailment which caused plaintiff's injuries in the instant case was a rail anchor on the tracks. There is no evidence on either side showing how this anchor was put on the tracks. From this Appellant argues that it must, as a matter of law, be assumed that the anchor was placed on the tracks by a third party and that this third party must have had improper or even criminal motives in so doing. Even if Appellant's assumption were a fact, the argument ignores the fundamental question, did the presence of the anchor in close proximity to the tracks where the railroad company knew or should have known that trespassers were frequent constitute negligence from which Appellee's injuries resulted in whole or in part? This again, is a question of fact which is within the province of the jury. If the jury found that the presence of the anchor under those circumstances was negligence and that as a result of this negligence an injury was foreseeable, even a criminal intervening act would become immaterial. Lillie v. Thompson, 332 US 459. The evidence showed that the rail anchor was something used only by railroads, that there had been repair work in the area within a period of three weeks prior to the accident, that it was customary for the repair crew to pick up unused or replaced materials after repair work and that a rail anchor could be used to derail a train.

From those facts the jury could have found, as it obviously did, that the railroad company was negligent in its failure to remove the anchor. To say that this court should determine as a matter of law that the intervention of third party should take the question from the jury would subvert the U. S. Supreme Court's decision in Rogers v. Missouri Pacific, supra. Appellant would have us also nullify the very language of the Act itself and add to "resulting in whole or in part from the negligence of (the railroad)" the words "unless there is an intervening act." Appellant's argument as to the foreseeability of Appellee's injuries also involves a question of fact which the jury has decided against Appellant. The evidence was there from which the jury could reach the conclusion which it did.

██ Appellant argues at great length that Appellee's injury was caused solely by his own negligence. In support he argues that on pretrial deposition Appellee admitted that "the sole and only cause of his injuries was the collision between the motor car he was riding and rail anchors laying over the top of the rail." There is no dispute in the evidence that this collision was the immediate cause of Appellee's injuries. The dispute arises as to whether Appellee's failure to see these rail anchors constituted contributory negligence. The jury was properly instructed by the court not only as to the meaning of contributory negligence and causation but also as to how any contributory negligence which if found to exist, should affect its verdict. We must assume that the jury acted on these instructions in arriving at its verdict.

██ Appellant also argues that reversible error was committed in the giving of certain of Appellee's instructions and the refusal of certain of Appellant's instructions. Appellant objects to the giving of Appellee's instruction 4 which in effect informed the jury that "assumption of risk" was not a defense to the claim. It is undisputed that Title 45 US Code (Railroads) 54 elimi-

nates the doctrine of "assumption of risk" as a defense. Appellant contends that since it did not make "assumption of risk" an issue in the case it was error to give the instruction. Although Justice Frankfurter in a specially concurring opinion in Tiller v. Atlantic Coast Line R. Co., 318 US 54, 72 did suggest that such an instruction should not be used, it was not deemed reversible error. (See Larsen v. Chicago & N. W. R. Co. 171 F2d 841, 846 and Wantland v. Illinois Cent. R. Co. 237 F2d 921 (7th Cir 1956), although the question was not directly involved in either decision.) Although Appellant did not characterize the actions of Appellee in terms of "assumption of risk" it did however emphasize the duties of Appellee and the relationship of these duties to the mishap. Accordingly we find no error in the giving of this instruction.

We have considered Appellant's objections to the Court's rulings on other instructions but having discussed the legal grounds for said objections heretofore in this opinion it is sufficient to say that we believe that the Court's rulings are consistent with our views. Likewise the basis for Appellant's objection to the verdict of the jury has been elsewhere discussed in this opinion and we believe that said verdict is consistent with the views herein expressed.

We find no error in the judgment of the Circuit Court of Peoria County and accordingly it is affirmed.

Judgment affirmed.

ALLOY, P. J. and CORYN, J., concur.