ROGERS *v.* MISSOURI PACIFIC RAILROAD CO.

No. 28.  Argued November 7, 1956.—Decided February 25, 1957.

*Mark D. Eagleton* argued the cause for petitioner. With him on the brief was *Eugene K. Buckley.*

*Donald B. Sommers* argued the cause for respondent. With him on the brief was *Thomas T. Railey.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

A jury in the Circuit Court of St. Louis awarded damages to the petitioner in this action under the Federal Employers' Liability Act.[1] The Supreme Court of Missouri reversed upon the ground that the petitioner's evidence did not support the finding of respondent's liability.[2] This Court granted certiorari to consider the question whether the decision invaded the jury's function.[3]

Petitioner was a laborer in a section gang, working on July 17, 1951, along a portion of respondent's double-track line which, near Garner, Arkansas, runs generally north and south. The tracks are on ballast topping the surface of a dirt "dump" with sloping sides, and there is a path about a yard wide bordering each side of the surface between the crest of the slope and the edge of the ballast. Weeds and vegetation, killed chemically preparatory to burning them off, covered the paths and slopes. Petitioner's foreman assigned him to burn off the weeds and vegetation—the first time he was given that task in the two months he had worked for the respondent. He testified that it was customary to burn off such vegetation with a flame thrower operated from a car running on the tracks. Railroad witnesses testified, however, that the respondent discontinued the use of flame throwers at least

---

[1] 35 Stat. 65, as amended, 36 Stat. 291, 53 Stat. 1404, 45 U. S. C. § 51 *et seq.*

[2] 284 S. W. 2d 467.

[3] 350 U. S. 964.

a year earlier because the fires started by them sometimes spread beyond the railroad right of way.

Petitioner was supplied with a crude hand torch and was instructed to burn off the weeds and vegetation along the west path and for two or three feet down the west slope. The events leading to his mishap occurred after he proceeded with the work to a point within thirty to thirty-five yards of a culvert adjoining the path.

Petitioner testified, without contradiction, that the foreman instructed him and other members of the section gang to stop what they were doing when a train passed and to take positions off the tracks and ties to observe the journals of the passing train for hotboxes. The instructions were explicit not to go on either of the tracks or to stand on or near the ends of the ties when a train was passing on a far track. This was a safety precaution because "the sound of one train would deaden the sound of another one that possibly would come from the other way."

On this day petitioner heard the whistle of a train which was approaching from behind him on the east track. He promptly "quit firing" and ran north to a place on the path near the mentioned culvert. He was standing a few feet from the culvert observing the train for hotboxes when he became enveloped in smoke and flames. The passing train had fanned the flames of the burning vegetation and weeds, carrying the fire to the vegetation around his position. He threw his arm over his face, retreated quickly back on the culvert and slipped and fell from the top of the culvert, suffering the serious injuries for which he sought damages in this suit.

The complaint alleges negligence in that petitioner was "required to work at a place in close proximity to defendant's railroad tracks, whereon trains moved and passed, causing the fire from said burning weeds and the smoke therefrom to come dangerously close to plaintiff and

requiring plaintiff to move away from said danger." Negligence was also alleged in that the surface of the culvert was not properly maintained because, instead of the usual flat surface giving firm footing for workmen, the surface was "covered with loose and sloping gravel which did not provide adequate or sufficient footing for plaintiff to thus move or work under the circumstances."

We think that the evidence was sufficient to support the jury finding for the petitioner. The testimony that the burning off of weeds and vegetation was ordinarily done with flame throwers from cars on the tracks and not, as here, by a workman on foot using a crude hand torch, when that evidence is considered with the uncontradicted testimony that the petitioner was where he was on this narrow path atop the dirt "dump" in furtherance of explicit orders to watch for hotboxes, supplied ample support for a jury finding that respondent's negligence played a part in the petitioner's injury. These were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, would suffer just such an injury as he did.[4] Common experience teaches both that a passing train will fan the flames of a fire, and that a person suddenly enveloped in flames and smoke will instinctively react by retreating from the danger and in the process pay scant heed to other dangers which may imperil him. In this view, it was an irrelevant consideration whether the immediate reason for his slipping off the culvert was the presence of gravel negligently allowed by respondent to remain on the surface, or was some cause not identified from the evidence.

The Missouri Supreme Court based its reversal upon its finding of an alleged admission by the petitioner that

---

[4] *Lillie* v. *Thompson*, 332 U. S. 459.

he knew it was his primary duty to watch the fire. From that premise the Missouri court reasoned that petitioner was inattentive to the fire and that the emergency which confronted him "was an emergency brought about by himself." [5] It said that if, as petitioner testified, the immediate cause of his fall was that loose gravel on the surface of the culvert rolled out from under him, yet it was his inattention to the fire which caused it to spread and obliged petitioner "to move blindly away and fall," and this was "something extraordinary, unrelated to, and disconnected from the incline of the gravel at the culvert." [6]

We interpret the foregoing to mean that the Missouri court found as a matter of law that the petitioner's conduct was the sole cause of his mishap. But when the petitioner agreed that his primary duty was to watch the fire he did not also say that he was relieved of the duty to stop to watch a passing train for hotboxes. Indeed, no witness testified that the instruction was countermanded. At best, uncertainty as to the fact arises from the petitioner's testimony, and in that circumstance not the court, but the jury, was the tribunal to determine the fact.

We may assume that the jury could properly have reached the court's conclusion. But, as the probative facts also supported with reason the verdict favorable to the petitioner,[7] the decision was exclusively for the jury to make.[8] The jury was instructed to return a verdict for the respondent if it was found that negligence of

---

[5] 284 S. W. 2d, at 472.

[6] *Ibid.*

[7] *Myers* v. *Reading Co.,* 331 U. S. 477.

[8] "The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable." *Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29, 35.

the petitioner was the sole cause of his mishap.[9] We must take it that the verdict was obedient to the trial judge's charge and that the jury found that such was not the case but that petitioner's injury resulted at least in part from the respondent's negligence.

The opinion may also be read as basing the reversal on another ground, namely, that it appeared to the court that the petitioner's conduct was at least as probable a cause for his mishap as any negligence of the respondent, and that in such case there was no case for the jury. But that would mean that there is no jury question in actions under this statute, although the employee's proofs sup-

---

[9] The jury was not charged that contributory negligence, if any, was to be considered merely in diminution of any damages. 35 Stat. 66, 45 U. S. C. § 53. Instruction No. 2 was as follows:

"The Court instructs the jury that under the law applicable to this case it was the duty of the plaintiff to exercise ordinary care for his own safety, at all times, while performing his duties as an employee of the defendant.

"In this connection, the Court instructs the jury that if you find and believe from the evidence that on July 17, 1951 the plaintiff, James C. Rogers, while an employee of the defendant and while burning weeds on a portion of defendant's right-of-way near 'Garner Crossing' near the City of Garner, Arkansas, did move about on said railroad right-of-way with his arm over his eyes, and did move backwards and sidewards without looking in the direction in which he was walking, and if you further find that under the circumstances mentioned in the evidence the plaintiff, in exercising ordinary care for his own safety, could have and should have looked in the direction in which he was walking, but failed to do so and, if you further find that the plaintiff in failing to do so did not exercise ordinary care for his own safety and was guilty of negligence and that such negligence, if any was the sole proximate cause of his injuries, if any, and that such alleged injuries, if any, were not directly contributed to or caused by any negligence of the defendant in any of the particulars submitted to you in other instructions herein, then, in that event, the plaintiff is not entitled to recover against the defendant, and you will find your verdict in favor of the defendant."

port with reason a verdict in his favor, unless the judge can say that the jury may exclude the idea that his injury was due to causes with which the defendant was not connected, or, stated another way, unless his proofs are so strong that the jury, on grounds of probability, may exclude a conclusion favorable to the defendant. That is not the governing principle defining the proof which requires a submission to the jury in these cases. The Missouri court's opinion implies its view that this is the governing standard by saying that the proofs must show that "the injury would not have occurred but for the negligence" of his employer, and that "[t]he test of whether there is causal connection is that, absent the negligent act the injury would not have occurred." [10] That is language of proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury.

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.[11] It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence.[12] Judicial

---

[10] 284 S. W. 2d, at 471.

[11] *Coray* v. *Southern Pacific Co.*, 335 U. S. 520.

[12] ". . . [T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 35 Stat. 66, 45 U. S. C. § 53.

appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.[13] Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or *in part*" to its negligence.[14] (Emphasis added.)

The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant.[15] The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law

---

[13] Proof of violation of certain safety-appliance statutes without more proves negligence and also eliminates contributory negligence as a consideration for any purpose. Note 11, *supra*. The only issue then remaining is causation. *Carter* v. *Atlanta & St. A. B. R. Co.,* 338 U. S. 430; *Myers* v. *Reading Co.,* 331 U. S. 477.

Moreover, "[w]hat constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. Federal decisional law formulating and applying the concept governs." *Urie* v. *Thompson,* 337 U. S. 163, 174.

[14] ". . . [E]very common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury . . . or . . . death . . . resulting *in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier . . . ." (Emphasis added.) 35 Stat. 65, 45 U. S. C. § 51; *Coray* v. *Southern Pacific Co.,* 335 U. S. 520, 523–524.

[15] For a comprehensive survey of the history of the FELA, see Griffith, The Vindication of a National Public Policy Under the Federal Employers' Liability Act, 18 Law & Contemp. Prob. 160.

defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit.[16] The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial,[17] from which the jury may with reason make that inference.

The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence.[18] Originally, judicial administration of the 1908 Act substantially limited the cases in which employees were allowed a jury determination. That was because the courts developed concepts of assumption of risk [19] and of the coverage of the law,[20] which defeated

---

[16] *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54.

[17] Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *The Robert Edwards*, 6 Wheat. 187, 190.

[18] While the primary reason was a protest against undue comment by trial judges as to the facts, the original 1906 Act provided: "All questions of negligence and contributory negligence shall be for the jury." 34 Stat. 232. Hearings before Senate Committee on Interstate Commerce on H. R. 239, 59th Cong., 1st Sess. 68–69. The inclusion in the 1908 statute of another provision, "All questions of fact relating to negligence shall be for the jury to determine," was proposed but not adopted. The view prevailed that this would be surplusage in light of the Seventh Amendment embodying the common-law tradition that fact questions were for the jury. Hearings before Senate Committee on Education and Labor on S. 5307, 60th Cong., 1st Sess. 8–9, 45–46.

[19] *Seaboard Air Line R. Co.* v. *Horton*, 233 U. S. 492.

[20] *Tipton* v. *Atchison, T. & S. F. R. Co.*, 298 U. S. 141; *Illinois Central R. Co.* v. *Behrens*, 233 U. S. 473.

employee claims as a matter of law. Congress corrected this by the 1939 amendments and removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in these cases—whether employer fault played any part in the employee's mishap.[21]

Cognizant of the duty to effectuate the intention of the Congress to secure the right to a jury determination, this Court is vigilant to exercise its power of review in any case where it appears that the litigants have been improperly deprived of that determination.[22] Some say the Act has shortcomings and would prefer a workmen's compensation scheme. The fact that Congress has not seen fit to substitute that scheme cannot relieve this Court of its obligation to effectuate the present congressional intention by granting certiorari to correct instances of improper administration of the Act and to prevent its erosion by narrow and niggardly construction. Similarly, once certiorari is granted, the fact that the case arises under the Federal Employers' Liability Act cannot in any wise justify a failure on our part to afford the litigants the same measure of review on the merits as in every other case.[23]

The kind of misconception evidenced in the opinion below, which fails to take into account the special features of this statutory negligence action that make it significantly different from the ordinary common-law negligence

---

[21] 53 Stat. 1404. For this Court's interpretation of these amendments, see *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54 (assumption of risk); *Southern Pacific Co.* v. *Gileo,* 351 U. S. 493 (coverage); *Reed* v. *Pennsylvania R. Co.*, 351 U. S. 502 (coverage).

[22] *Jacob* v. *New York City,* 315 U. S. 752.

[23] We adopt the reasoning in this regard of Part I of MR. JUSTICE HARLAN's opinion concurring in No. 46 and dissenting in this case and in Nos. 42 and 59. *Post,* p. 559.

action, has required this Court to review a number of cases.[24]  In a relatively large percentage of the cases reviewed, the Court has found that lower courts have not given proper scope to this integral part of the congressional scheme.  We reach the same conclusion in this case.[25]  The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases [26] where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury.  Special and important reasons for the grant of certiorari in these cases are certainly present when lower federal and state courts persistently deprive litigants of their right to a jury determination.

[24] See Appendix to opinion of MR. JUSTICE DOUGLAS in *Wilkerson* v. *McCarthy,* 336 U. S. 53, 71; Note, 69 Harv. L. Rev. 1441.

[25] Rule 19 authorizes this Court to review by certiorari the judgment of a lower federal or state court "where there are special and important reasons therefor," such as deciding a federal question of substance in a way probably not in accord with, or in conflict with, applicable decisions of this Court.

[26] This Court found that a jury question was presented, and reversed in the following cases: *Schulz* v. *Pennsylvania R. Co.,* 350 U. S. 523; *Stone* v. *New York, C. & St. L. R. Co.,* 344 U. S. 407; *Carter* v. *Atlanta & St. A. B. R. Co.,* 338 U. S. 430; *Wilkerson* v. *McCarthy,* 336 U. S. 53; *Anderson* v. *Atchison, T. & S. F. R. Co.,* 333 U. S. 821; *Lillie* v. *Thompson,* 332 U. S. 459; *Myers* v. *Reading Co.,* 331 U. S. 477; *Ellis* v. *Union Pac. R. Co.,* 329 U. S. 649; *Jesionowski* v. *Boston & M. R. Co.,* 329 U. S. 452; *Lavender* v. *Kurn,* 327 U. S. 645; *Keeton* v. *Thompson,* 326 U. S. 689; *Blair* v. *Baltimore & O. R. Co.,* 323 U. S. 600; *Tiller* v. *Atlantic Coast Line R. Co.,* 323 U. S. 574; *Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29; *Bailey* v. *Central Vt. R. Co.,* 319 U. S. 350; *Tiller* v. *Atlantic Coast Line R. Co.,* 318 U. S. 54; *Seago* v. *New York Cent. R. Co.,* 315 U. S. 781; *Jenkins* v. *Kurn,* 313 U. S. 256.

The Court found that no question for the jury was presented, and affirmed in the following cases: *Moore* v. *Chesapeake & O. R. Co.,* 340 U. S. 573; *Eckenrode* v. *Pennsylvania R. Co.,* 335 U. S. 329; *Brady* v. *Southern R. Co.,* 320 U. S. 476.

We have considered the remaining questions not passed upon by the Supreme Court of Missouri, and find them to be unsubstantial. Accordingly, we remand the case for proceedings not inconsistent with this opinion.

The judgment is

*Reversed.*

MR. JUSTICE BURTON concurs in the result.

MR. JUSTICE REED would affirm the judgment of the Supreme Court of Missouri.

[For dissenting opinion of MR. JUSTICE FRANKFURTER, see *post*, p. 524.]

[For opinion of MR. JUSTICE HARLAN, dissenting in this case, see *post*, p. 559.]