EVANS, APPELLANT, *v.* UNION DEPOT CO., APPELLEE.*

---

(No. 7120—Decided June 11, 1963.)

*Messrs. Campbell, Potts & Hoskins* and *Messrs. Volkema, Wolske & Bopeley,* for appellant.

*Messrs. Bricker, Evatt, Barton, Eckler & Niehoff,* for appellee.

DUFFEY, J.  This appeal is from a judgment of the Common Pleas Court of Franklin County granted on a motion for a directed verdict at the close of the plaintiff's case.  The petition states two causes of action.  The first is based on Section 51 *et seq.*, Title 45, U. S. Code (Federal Employers' Liability Act), and the second on Section 1 *et seq.*, Title 45, U. S. Code (Federal Safety Appliance Act).  The assignments of error and argument are limited to the first cause of action.  In his brief, appellant states that he reserves exceptions on the second cause of action.  Under the statutes and rules of this court, the failure to assign or argue errors constitutes a waiver.  The appellant having chosen not to press the appeal on the second cause of action, the judgment of the trial court thereon must be affirmed.

In stating the facts on the first cause of action, this court must accept that evidence which is most favorable to appellant. Willie Evans was employed by the appellee as extra help to handle mail during the Easter season of 1959.  On April 19, he was engaged in unloading several railroad mail cars filled with sacks (or "slugs") of mail.  These sacks weighed 80 to 100 pounds, and were closed at one end by draw-string ropes and a clamp.  The cars were fully loaded with between 400 and 500 sacks stacked about six to seven feet high.  Appellant and several other men had unloaded two or three cars.  On the car involved here they were using a mechanized conveyor.  Appellant and one other man placed the sacks on the conveyor, and two others were at the other end of the conveyor to unload and sort.  They had removed the sacks from the area behind the

box car doors. Then appellant and his co-worker went inside the car and proceeded to begin the removal of the sacks at the east end of the car. At the direction of the appellee's foreman, the conveyor was moved into the car and placed about five feet from the pile of sacks. It was metal with a moving belt inclined upward from the car and about 20 inches to three feet in height. The sacks were stacked parallel to the car with the rope end of the sack facing the appellant. He is five feet, six inches in height. To remove the top sack, he climbed upon the bottom row, "propped" or braced himself, and heaved upon the ropes to dislodge the sack from the pile. The ropes broke and appellant was thrown backward. He "come back across the conveyor and he struck it an awful blow" about waist high and at or near the corner. He "flipped over," landing on his back with his feet on the conveyor. There is no issue before us as to the fact of injury or amount of damages.

It also appears that the sack could not feasibly be moved by lifting, and that pulling upon it was the accepted method of handling. The conveyor was furnished by the appellee and was placed in the car at the foreman's direction. At that time the use of the conveyor had just been adopted by appellee—or at least adopted a short time before. The previous method had been for a man to pull the sacks to the car door where other employees would move them to the mail truck and still others sort them. While of dubious significance, it appears in the cross-examination of one witness that the conveyors are no longer used in this type of job.

There are two assignments of error. Each involves the problem of an alleged variance between the pleadings and the evidence. The pertinent portion of the amended petition is stated in the second paragraph:

"(2) Plaintiff further states that on or about April 19, 1959, he was performing his duties by unloading a mail car; that said mail car was loaded with magazine sacks; that said sacks were equipped with ropes for the purpose of sealing said sacks; that on said date the magazine sacks were stacked to heights of seven or eight feet in said mail car; that plaintiff grasped a mail sack that was stacked approximately seven feet from the floor by the aforementioned ropes and began to pull the sack from the pile; that thereupon the ropes broke and the plaintiff was thrown

backwards to the floor and against a moving conveyor belt; that the ropes were of insufficient strength to pull on a loaded car; that said ropes were unsafe; that the conveyor belt was not protected and that the defendant failed to provide plaintiff with a safe place to work.''

In the first assignment, appellant complains of the sustaining of an objection to testimony and the proffered evidence relating to the use of work tools. The petition does not contain any allegations as to tools. However, regardless of the question of variance, the mere fact that appellant was not furnished with a tool is irrelevant. To establish negligence, it would be necessary to adduce some evidence that some type of tool appropriate to this work could be furnished by the employer. The proffer does not include any such suggestion and the record does not disclose any other effort to adduce such evidence. We find no prejudicial error in sustaining that objection.

An objection was also sustained to a question relating to the number of employees used in this job in previous instances. The proffer offered to prove that the previous number was 10 to 14 men as opposed to four in the present case. If offered to establish negligence by failure to provide sufficient help, there are no allegations in the petition with respect to employees. Appellant did not state to the trial judge the purpose for which his testimony was offered. Under the circumstances, we find no prejudicial error in the ruling.

The second assignment challenges the granting of the directed verdict and judgment. It presents the question of whether the record raises an issue of fact as to negligence. It must be emphasized that this is a F. E. L. A. case. Injury proximately caused by the negligence of the employer, even if only in part, entitles the employee to a recovery. As the history of litigation under the Act clearly shows, the courts have had difficulty in accepting this approach to employee injuries. It is probable that our legal mind finds it easier to deal with liability without fault as in workmen's compensation laws than to retain the element of employer fault while eradicating from our mind all the other well-established common law concepts. However, the special features of this Act are firmly established. In *Rogers* v. *Missouri Pacific Rd. Co.*, 352 U. S., 500, at 506, 1 L. Ed. (2d), 493, 77 S. Ct., 443, the court states:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)"

Appellant disclaims, at least in this court, any contention of negligence by the employer predicated on the breaking of the ropes. These are the property of and in control of the federal government and not the responsibility of the appellee. It is also apparent on the record that there is insufficient evidence to show any defect in the design or protective devices on the conveyor. However, appellant argues that there was a failure to provide a safe place to work. The first question then is to determine whether the record establishes a duty, breach and proximate cause in that regard.

It is apparent that considerable physical force was required to dislodge the sack from the top of the stack. This was a canvas sack of 80 to 100 pounds. At the height of the stack, the sack could not be pulled upward, but rather the force would be outward and somewhat downward. Thus, it had to be pulled across and dislodged from other sacks. This would create a resistance necessitating the use of substantial muscular power and body leverage. It is elementary in the laws of physics that there is an equal and an opposite reaction. If the resistance is freed, the force and weight will propel an object (here the man's body) backward. To put it plainly, if you pull with most of your strength and add your body's weight, then it must follow that being off balance you will fall back heavily if the resistance is released.

In determining the existence of a duty, it is not significant that the particular manner of an occurrence be foreseen. It is only necessary that it be reasonably foreseeable that an unreasonable risk will arise. Thus, the fact that the particular event here was the breaking of the ropes rather than the hand grasp slipping, the material tearing, or the bag releasing suddenly is not important. The fact that a man would be propelled heavily backward if released for any reason while unbalanced and pulling hard was most foreseeable. We think it equally clear that if any object is placed immediately behind such a man he will almost surely strike it with his body. If that object is also heavy and waist high or lower, the risk of injury is substantially increased. In our opinion, the circumstances were such as to give rise to a duty. Whether the circumstances of the placement of the conveyor, the nature of the sacks, and the manner in which they were stacked constituted an unreasonably hazardous condition is, we believe, a question upon which reasonable minds could differ and, therefore, an issue for the jury on the evidence of record.

Appellee has referred to the rope breakage as the "sole proximate cause" of the injury. The breaking of the ropes is a physical cause of the injury. Also contributing to the physical circumstances are the weight of the sacks, their manner of stacking, and the placement of the conveyor. The jury could reasonably find that but for them appellant would not have suffered the injuries claimed. Having concurrent causes, we cannot say as a matter of law that the work conditions were not a proximate cause of the injuries.

The remaining question raised is whether this issue of negligence is within the pleadings. The *required* content of a petition is provided in Section 2309.04 (A):

"(A) A statement of facts constituting a cause of action in ordinary and concise language;"

There is, of course, a fundamental difference between the ultimate facts and the theory or analysis of those facts that the plaintiff may choose to develop. The ultimate facts must be pleaded; the theory or analysis need not. We are all aware of the practice of including specifications of negligence and the continuing debate on their use. However, whether or not specifications are proper, they are *not* a necessary part of pleading

a cause of action. Only ultimate facts need be pleaded, and an ultimate fact "furnishes the predicate for the proof of all such incidental facts and circumstances both of omission and commission as fairly tend to establish the negligence of the primary fact complained of." *Davis* v. *Guarnieri* (1887), 45 Ohio St., 470, at 485. We do not view the case of *New York, Chicago & St. Louis Rd. Co.* v. *Kistler* (1902), 66 Ohio St., 326, as establishing any different rule. The court there pointed out that the acts of commission or omission relied upon should be stated in the petition. The physical circumstances of the place of work and the manner of injury are all fairly alleged here. The petition does go on to state that the ropes were "unsafe" and that the place of work was "unsafe." This sort of pleading may be of tactical benefit or may be of help to the judge in following the evidence and drafting instructions. However, such statements add nothing to the ultimate facts. We find no variance between the evidence adduced and the facts pleaded such as would prevent the appellant from presenting the issue of negligence arising from the physical conditions of the employment. If appellee desired further particularization, he could have used a motion to make definite and certain, but did not do so. It might be added that discovery procedures were available (and were used here) to provide the defending party with ample additional information.

We recognize that what has been stated here is not entirely consistent with headnote four in *O'Leary* v. *Pennsylvania Rd. Co.* (Franklin County, 1953), 70 Ohio Law Abs., 133. The headnote is, of course, that of the publisher and not of the court. In the opinion, the assignments of error related to three special instructions. The opinion appears entirely correct in its remarks on special charges three and five. Charge six was a charge on an unsafe place to work. The petition alleged that plaintiff was a fireman on a locomotive, that after cleaning the fire he reached to hang up the fire hook, and that while so reaching and off balance, the crew in another locomotive applied power without proper authority, causing his locomotive to start with a jerk or jar, but he was thrown backward, striking the floor and a shaker post.

There is nothing in the opinion to indicate that the plaintiff did, or on the evidence could, contend that the physical cir-

cumstances of hanging the hook and the placement of the shaker post constituted an unsafe place to work. The decision rather clearly reflects that the plaintiff relied on the act of starting the other locomotive without a prior signal from the engineer in charge who was located in the plaintiff's locomotive. We would, therefore, accept the court's conclusion that the special instruction on a safe place to work was improper in that case. In the course of its discussion, the court stated that to raise an issue of an unsafe place to work "the allegation must contain a statement of an act of omission or commission which would cause harm to the plaintiff." In the context of that case, we see nothing wrong with the statement. Appellee appears to interpret that to mean that even though the petition describes the basic physical circumstances relied upon, it must also go on and specify how or in what way they are unsafe. If that is a proper interpretation of the court's meaning (which we doubt), then we believe it confuses the fundamentals of code pleading with the common and debatable practice among attorneys of including specifications of negligence. If the physical circumstances are fairly described, anything further could only constitute an allegation of an analysis or theory as to the legal significance of those circumstances.

The judgment of the Common Pleas Court as to the first cause of action is reversed. The judgment as to the second cause of action is affirmed. The cause will be remanded for further proceedings.

*Judgment accordingly.*

TROOP, J., concurs.

BRYANT, J., dissenting in part. I concur with the decision of the majority affirming the trial court's decision as to the second cause of action, but must respectfully dissent from the decision of this court reversing the judgment of the court below as to the first cause of action. It is the opinion of the majority of this court that "the weight of the sacks" and "their manner of stacking" were matters in the control of the appellee. I am unable to agree. The real culprit here was the defective rope which broke in the hands of the plaintiff. The sacks were not owned by appellee, nor did it have any control of their re-

pair or the replacement of the ropes. Appellee likewise neither determined "the weight of the sacks" nor did appellee have anything to do with stacking them, as I view the record. In my view, the location of the conveyor, far from increasing or causing injury to appellant, probably shortened the distance he fell and may have lessened his injury.