**SOUTHERN PACIFIC COMPANY**

v.

**COMMERCIAL TRANSPORT CORPORA-TION and the TUG SATURN, her engines, boilers, tackle, etc.**

**No. 5017.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 20, 1966.

James G. Burke, Jr., J. Dwight Le-Blanc, Jr., Robert Deane, Chaffe, Mc-Call, Phillips, Burke, Toler & Hopkins, New Orleans, La., for libelant.

Edmond C. Salassi, John R. Peters, Jr., John H. Lurry, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for respondents.

WEST, District Judge:

Libelant, Southern Pacific Company, brings this libel seeking to recover for damages to its railroad bridge over Bayou Carlin at Delcambre, Louisiana, allegedly caused when respondent vessel, the Tug SATURN, collided with some of the pilings on the night of January 24, 1961, or during the early morning of January 25, 1961. Respondent denied damaging the bridge. The Court concludes that the damage was, in fact, caused by the respondent Tug SATURN, and in connection therewith makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Libelant is the owner of the railroad lift bridge spanning Bayou Carlin at Delcambre, Louisiana. This lift-type drawbridge, running generally east and west, is about 10 feet wide and spans about 42 feet of bayou. Approximately 74 feet to the north of this bridge is a highway drawbridge approximately 30 feet wide and spanning the same bayou. When closed, this highway bridge leaves only a two foot clearance to the water. On the south end of this bridge system there are two wings consisting of clusters of pilings tied together with four walings extending from a point in the bayou toward the banks forming a sort of funnel through which vessels pass when entering into the bridge system. These wings on the south end of the system are each 16 feet in length. On the north end of the system there are similar wings about 21 feet in length. It is the 16 foot wing consisting of pilings and walings extending toward the east bank of the bayou on the south side of the system that libelant contends was damaged by the respondent Tug.

2. The Tug SATURN is a motor vessel owned and operated by respondent, Commercial Transport Corporation. This respondent also owns the barge ABL 2503.

3. Since the highway bridge has a clearance above the water when closed of only two feet, it is obvious that no vessel could pass through this bridge system without at first having arranged for the opening of this highway drawbridge.

4. At approximately 5:00 p. m. on January 24, 1961, there being no trains due across the railroad bridge during the night, Mr. Pelletier, the watchman at the railroad bridge, opened the span and left for the night. At the time he left there was no damage to this bridge or its appurtenances. Upon his return to the bridge at 8:30 a. m. on January 25, 1961, he immediately noticed that five pilings and four walings on the southeast wing of the fender system had been extensively damaged.

5. During Mr. Pelletier's absence from 5:00 p. m. on January 24 to 8:30 a. m. on January 25, 1961, the highway bridge was attended by Mr. Gene Segura

who kept a log of all vessels passing through the highway bridge. The only vessel to pass through the bridge system during that time was the respondent Tug SATURN. She passed through, without a tow, going from south to north, between 11:50 p. m. and 11:55 p. m. on January 24. She returned through the bridges proceeding from north to south, pushing the barge ABL 2503, between 1:15 a. m. and 1:25 a. m. on January 25, 1961. She again passed through the bridge system going south to north without a tow between 3:05 a. m. and 3:10 a. m. on January 25, and again, between 4:40 a. m. and 4:50 a. m. on January 25 she proceeded once again from north to south through the bridges pushing an unnumbered barge.

6. Mr. Segura, tending the highway bridge, heard what he believed to be some of the pilings at the railroad bridge cracking when the SATURN, pushing the barge ABL 2503, passed through at 1:25 a. m. on January 25, 1961.

7. The Tug SATURN is approximately 85 feet in length and 15 feet in breadth, and the barge ABL 2503 is 195 feet in length and 36 feet wide.

8. As the tug and its tow proceed in a southerly direction through the brige system, it is necessary for it to make a turn to its left as it proceeds under the railroad bridge due to the fact that the bayou, on the south side of the railroad bridge, bends eastward.

9. As the SATURN and its tow, after clearing the railroad bridge, attempted to follow the bayou in its eastward bend, it apparently struck the southeast wing of the fender system, causing the damage complained of.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C.A. § 1333.

2. In order to establish the existence of a fact, direct evidence is not required. Circumstantial evidence is not only sufficient, but in some instances may be more certain and satisfying and more persuasive than direct evidence. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Michalic v. Cleveland Tankers, 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

3. While it is very difficult in some instances to determine which vessel is responsible for damage to pilings protecting a bridge, nevertheless this difficulty does not relieve the bridge owner of identifying the vessel responsible. Until such identification is made by a preponderance of the evidence, the presumption of negligence against the vessel underway striking a stationary object does not arise. Wabash Railroad Co. v. The Irene Chotin, 175 F.Supp. 709 (E.D. La.1959).

4. Where a moving vessel causing damage to a stationary object is identified by a preponderance of the evidence, as the Court feels has been done in the present case, there is a presumption that the collision occurred through the negligence of the moving vessel. Sewerage and Water Board of New Orleans v. The Joe L. Hill, 118 F. Supp. 951 (E.D.La.1954) and cases cited therein.

5. Respondent, Commercial Transport Corporation, has failed to overcome the presumption, under the circumstances of this case, that the damage to the railroad bridge was caused by the negligence of its vessel, the Tug SATURN.

6. Since the damage to the railroad bridge was caused through the negligence in the operation of the Tug SATURN, said vessel and its owner, Commercial Transport Corporation, are legally liable therefor.

Judgment will be rendered accordingly.