L. C. HOLLINGHEAD, Plaintiff-Appellee, *v.* TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Defendant-Appellant.

Third District   No. 74-362

Opinion filed June 9, 1976.

Cassidy, Cassidy & Mueller, of Peoria (David Mueller, of counsel), for appellant.

Frederick Allen, of Peoria, and Rerat, Crill, Foley & Boursier, of Minneapolis, Minnesota (Robert Stone, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Plaintiff-employee obtained a judgment of $50,000 on a verdict for personal injuries against his employer, defendant, Toledo, Peoria & Western Railroad Company. The action was brought under provisions of the Federal Employers' Liability Act at 45 U.S.C. §51.[1] After defendant's post-trial motion was denied, defendant perfected this appeal.

The record shows that on November 3, 1971, plaintiff was instructed by his foreman to take the company's 1969 Chevrolet dump truck and have it

[1] "Every common carrier by railroad while engaging in commerce between any of the several States ° ° ° shall be liable in damages to any person suffering injury while he is employed by such carrier ° ° ° for such injury ° ° ° *resulting in whole or in part* from the negligence of any of the officers, agents, or employees of such carrier, *or by reason of any defect or insufficiency, due to its negligence, in its ° ° ° machinery ° ° ° or other equipment.*

Any employee of a carrier, any part of whose duties as such employee shall ° ° ° in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Emphasis added.)

loaded with 5 or 6 tons of asphalt. After inspecting the vehicle, plaintiff drove to the supplier's facilities and ordered 5 tons. The truck was weighed while empty, was loaded with asphalt by the supplier, and the loaded vehicle was reweighed. Although unable to read, plaintiff receipted for 6.45 tons and then proceeded toward his delivery site. While traveling westerly from Canton along highway 9 at a speed of 30 to 35 m.p.h., plaintiff heard a "whump"; his attention was abruptly consumed by his efforts to control the truck. Despite these efforts, the vehicle slid across both traffic lanes and rolled over and down the left embankment of the highway and over a fence, spilling its load off the road. The truck came to rest upright in a field a distance of about 50 feet from the nearest edge of the highway. The outside right rear dual rim was found to have become separated while the inside part remained attached to the vehicle. The separated portion of the rim, the undamaged tire, and the blown innertube were found closer to the highway from where the damaged truck had come to rest. The damage to the tube indicated that it had blown on the inside part nearest the rim. Plaintiff sustained the personal injuries for which the verdict was awarded.

On the issue of causation, plaintiff introduced proof that at the time of the accident, the right rear dual tires were of a size (i.e. 8.20-20/10 plys) having a maximum load capacity of 3550 pounds each, and that with a 6.45 ton load added to the weight of the vehicle, each of these rear tires were required to support a load of 4676 pounds. It was also shown that even with a 5-ton load, these tires would have been burdened beyond specified capacities, with 4063 pounds each. Tires with greater load-bearing capacities were shown to have been available at all times as optional equipment, and it was proved that information to that effect had been furnished defendant at the time it purchased the vehicle, was maintained in its files, and was available from the dealer.

Over defendant's objection, plaintiff was permitted to testify that while driving this same vehicle on September 10, 1971 with a 7-ton load of asphalt, he heard something hit the truck as he was driving along highway 24. On that occasion, he observed that a piece of rubber had separated from the outside right rear dual tire. He reported the incident to defendant. Although all the rear tires had snow treads at that time, Keith Akers, a service station operator, testified that he replaced the two right rear duals, *at defendant's request,* with two conventional tread tires of the same size (i.e., 8.20-20/10 plys). He said that the outside rear tire on that occasion was badly "chewed up" and indicated to him that the vehicle had operated a distance before the inside right tire had deflated. There was evidence that no tires had thereafter been replaced on the vehicle during the interval ending with the accident of November 3.

No other direct evidence as to the cause of this accident of November 3

was offered by any party. Plaintiff's witness, Wayman Sappington, who had towed the truck after the accident, was the operator of a towing and auto repair business for 13 years, and stated that he had seen "quite a few" accidents during that time. He testified that in his opinion, the rim separation and the blowout on November 3 were just as likely a result of the accident as a cause of it. As to photographs of gouge marks on the highway which might have been caused by the sudden separation of a rim, he stated it to be his opinion that these could have been made by the truck as it overturned on the highway. No part of the spilled load was on the highway, however. He verified that the right rear duals were regular tread tires while the left were snow tires and testified that "it is not good to run any vehicle with one type of tire that doesn't match the other type on the same end of the vehicle."

On this state of the record, it is defendant's contention on appeal that (1) it was error for the jury to be permitted to hear evidence of facts pertaining to the prior incident of September 10, 1971, and to be permitted to to hear certain evidence as to the truck's specifications, especially where the cause of the prior incident was purely a matter of inference, and (2) the circuit court erred in refusing to direct a verdict for defendant for lack of competent proof on the issues of negligence and causation.

■■■ The admittance of evidence in respect to a tire failure 2 months earlier on the same vehicle with a 7-ton load, and testimony as to the tire and vehicle specifications, and defendant's replacement with tires of the same weight bearing capacity, was not error. If this proof was not relevant to the issue of causation in respect to the accident of November 3, as defendant contends, it was nonetheless relevant to show the chain of defendant's control and knowledge of the tires that were maintained on the vehicle at the time of this later accident. Moreover, testimony of a prior occurrence of tire failure on the same wheel while carrying a load of 7 tons, is relevant and admissible to show defendant's notice of facts which required it to inquire as to the cause of that incident, and to discover the load-bearing limitations of its tires. (*Grant v. Joseph J. Duffy Co.*, 20 Ill. App. 3d 669, 314 N.E.2d 478 (1st Dist. 1974); *Moore v. Jewel Tea Co.*, 116 Ill. App. 2d 109, 253 N.E.2d 636 (1st Dist. 1969).) Such proof of prior similar occurrences has been held admissible to prove notice despite a contention equivalent to that made here, that the foundation for admittance was insufficient in the absence of evidence showing the cause of the previous failure. (*Charleston National Bank v. International Harvester Co.*, 22 Ill. App. 3d 999, 317 N.E.2d 585 (4th Dist. 1976).) If from the proof in respect to the occurrence of November 3, 1971, the jury could be justified in finding a causal connection between that accident and the type or capacity of the tires replaced on the vehicle in September,

it could conclude that defendant knew or ought to have known from the prior occurrence of the danger implicit in its instructions to plaintiff on November 3, that he load the vehicle with 5 or 6 tons of asphalt. *(Cahill v. New York, New Haven & Hartford R.R. Co.,* 236 F. 2d 410 (2d Cir. 1956).) The testimony as to defendant's knowledge of the tire specifications for load limitations was relevant and admissible for the same purpose.

■■ On the issue of whether negligence and causation were proved, the controlling law is set forth in *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443 (1957). It was stated there that what constitutes negligence for the purpose of this Federal statute is a Federal question *controlled by Federal decisional law* and that the various concepts of negligence applicable under the several State and local laws for other purposes is not controlling. Morover, the causal connection implicit in traditional concepts of proximate causation was held inapplicable in *Rogers* because it "fails to take into account the special features of this statutory negligence action that make it significantly different from the ordinary common law negligence action * * *." (352 U.S. 500, 509-510, 1 L. Ed. 2d 493, 501, 77 S. Ct. 443.) In reversing a decision of the Supreme Court of Missouri and reinstating a judgment entered on a verdict for the employee, the United States Supreme Court held that under this Federal statute, the test of whether a case is properly submitted to the jury "is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * * for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes * * *. *Judicial appraisal of the proofs* to determine whether a jury question is presented is *narrowly limited* to the single inquiry whether, with reason the conclusion may be drawn that negligence of the employer played any part at all in the injury * * *. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." (Emphasis added.) 352 U.S. 500, 506-507, 1 L. Ed. 2d 493, 499-500, 77 S. Ct. 443.

■■ Applying these foregoing Federal standards, we feel required to leave the verdict and judgment of the circuit undisturbed. It may be conceded as defendant contends, that there is proof in the record that anyone of a thousand things might have caused the incident. It may be conceded further that although the separation of the rim and tire, and the blowout, may have caused the accident, it is also inferable with reason that these events were caused by the forces of the accident itself. Yet of the "thousand things" that might have caused the accident, there is direct

evidence that the tires involved were overburdened at defendant's direction, and that defendant should have known that the tires it ordered for the vehicle were not designed to support such weights. The evidence indicates tire involvement and an opinion that their undercapacity could have caused the incident. There is no evidence whatever to indicate that any other of the possible "thousand things" was more likely the cause.[2] There being, therefore, a reasonable basis in the record for the inferences of causation and negligence made by the jury from among others that may also have been reasonable, all evidence as to other possible causes becomes irrelevant.

■■ The case before us is in many ways similar to *Lavender v. Kurn*, 327 U.S. 645, 90 L. Ed. 916, 66 S. Ct. 740 (1946), where much of the evidence was also circumstantial and conflicting. In that case, a judgment entered on a jury verdict for the death of a railroad employee was reversed by a State supreme court upon the grounds that "all reasonable minds would agree that it would be mere speculation and conjecture to say that [decedent] was struck by the mail hook" protruding from a backing railroad car. The State supreme court concluded that on the issue of causation "plaintiff failed to make a submissible case * * *." (327 U.S. 645, 651, 90 L. Ed. 916, 922, 66 S.Ct. 740.) Although there was some evidence in the record tending to show that it was physically and mathematically impossible for the defendant's hook to have struck decedent, and facts which persuasively indicated that decedent might have been murdered by a stranger to the case, the United States Supreme Court reinstated the verdict because of evidence that decedent might have been standing on a mound of cinders as the train passed, and after being struck by the protruding hook might have moved to lower grade before losing consciousness and life. "Only where there is a *complete absence* of probative facts to support the conclusion reached [by the jury]," said the United States Supreme Court, "does a reversible error appear. * * * [W]here, as here, there [exists] an evidentiary basis for the jury's verdict, *the jury is free to discard and disbelieve whatever facts are inconsistent with its conclusion.* And the *appellate court's function is exhausted when that evidentiary basis becomes apparent * * *.*" (Emphasis added.) 327 U.S. 645, 653, 90 L. Ed. 916, 923, 66 S.Ct. 740.

Hence, the jury here was free to discard testimony that the separation of the rim and wheel, and the blown-out tube might have been caused by the forces of the accident itself, and to accept the testimony consistent with its conclusion, that the blowout and separation of the rim and tire

---

[2] From the testimony of Mr. Sappington that "it is not good to run any vehicle with one type of tire that doesn't match the other type on the same end of the vehicle" the jury could infer reasonably that the use of regular tread on the right rear with snow treads on the left rear would cause more of the load to be shifted to the right."

might have been the cause. They were free to discard the testimony that gouge marks on the highway were caused by the truck as it overturned, especially where the record shows that no asphalt was spilled on the road, and to accept as true and consistent with their conclusion, that the gouge marks were made when the tube ruptured and freed the tire, causing the rim to strike the pavement and separate from that force. In the absence of evidence of any defect in the road or other cause of the tire's failure, the jury was free, on the basis of evidence in respect to the weight bearing specifications of the tire and the overload, to conclude that this factor was the cause, and that defendant was negligent in instructing plaintiff to get 5 or 6 tons, and in failing to warn him of the importance of not exceeding the load bearing limitations of its equipment. It was free to conclude that from a prior similar occurrence of tire failure, defendant was put on notice of facts which in obedience to a reasonable duty of care should have led it to discover the exact cause, and to the realization that the tire specifications in its possession and available from its dealer required lighter loads.

We have considered the cases cited by defendant and find them inapplicable. Being persuaded that no reversible error is shown, the judgment of the circuit court is affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.