TAUBITZ v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 67502. Submitted January 11, 1984, at Lansing.—Decided March 21, 1984.

Richard J. Taubitz, an employee of Grand Trunk Western Railroad, was injured while protecting a railroad car from oncoming traffic as the car was being pushed across a street by one of Grand Trunk's engines. Taubitz was struck by a motorcycle as the motorcyclist attempted to beat the railroad car across the crossing. Taubitz filed suit against Grand Trunk Western Railroad, Ralph G. Dominy, the operator of the motorcycle, and General Motors Corporation, which owned and maintained the crossing, in Genesee Circuit Court. Plaintiff's claim against Grand Trunk was brought under the Federal Employers Liability Act claiming that Grand Trunk was negligent in failing to provide him with either safe equipment or a safe place to work. Plaintiff's claims against Dominy and General Motors were settled on the first day of trial. The jury returned a verdict of no cause of action in favor of Grand Trunk. Judgment was entered, Earl E. Borradaile, J. Plaintiff appeals, contending that the trial court erred and a new trial should be ordered because defense counsel referred to General Motors' ownership of the intersection in clear violation of the trial court's ruling on a motion *in limine* and because the trial court refused to instruct the jury that the railroad has a nondelegable duty to provide its employees with a reasonably safe place to work. *Held:*

   1. Defense counsel's single reference to ownership of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 32 Am Jur 2d, Federal Employers' Liability and Compensation Acts §§ 1, 5, 15-17, 24, 30.
Liability under Federal Employers' Liability Act for intentional tort. 8 ALR3d 442.
[2] 32 Am Jur 2d, Federal Employers' Liability and Compensation Acts § 62.
[3, 4] 5 Am Jur 2d, Appeal and Error §§ 807, 896.
75 Am Jur 2d, Trial §§ 258, 259.
[4] 5 Am Jur 2d, Appeal and Error §§ 624-627.
[5] 4 Am Jur 2d, Appeal and Error §§ 537, 538.

intersection is not grounds for reversal. The reference was casual, was not repeated, and any prejudice flowing therefrom was removed by the trial court's curative instruction. The error was harmless. Furthermore, plaintiff never asked for a mistrial, nor did he ask for a new trial after the jury rendered its verdict against him. Therefore, the issue has not been preserved for appellate review absent a showing of manifest injustice. There was no manifest injustice in this case.

2. Plaintiff's contention that the trial court erred in failing to give a jury instruction that the railroad had a nondelegable duty to provide its employees with a safe place to work is rejected. Plaintiff's request for the instruction was not reduced to writing and filed as required by the court rules. Furthermore, plaintiff's request was conditioned on the trial court's giving an instruction proposed by defendant. That instruction was not given. Finally, defendant never took the position that it had delegated, or could delegate, to General Motors its duty to provide the injured employee a safe place to work.

Affirmed.

1. RAILROADS — FEDERAL EMPLOYERS LIABILITY ACT — NEGLIGENCE — ON-THE-JOB INJURIES.

   The Federal Employers Liability Act specifically grants a cause of action to a railroad company's employee if his or her on-the-job injury results in whole or in part from the negligence of any of the railroad company's agents or employees or by reason of any defect in its equipment, roadbed, or tracks due to its negligence (45 USC 51).

2. RAILROADS — FEDERAL EMPLOYERS LIABILITY ACT — NEGLIGENCE — ON-THE-JOB INJURIES — CIRCUIT COURTS — JURISDICTION.

   Michigan's circuit courts have concurrent jurisdiction with the federal district courts over claims brought under the Federal Employers Liability act by an employee of a railroad against the railroad alleging negligence resulting in the employee's on-the-job injury (45 USC 56).

3. TRIAL — VIOLATION OF COURT'S RULING ON MOTION — ERROR.

   No error requiring reversal occurred in a trial by virtue of defense counsel's reference, in clear violation of the trial court's ruling on a motion *in limine,* to the ownership of a railroad crossing intersection where the reference was casual, was not repeated, and any prejudice flowing therefrom was removed by the trial court's curative instruction to the jury.

4. Trial — Appeal — Preserving Question.

 The issue of whether error requiring reversal occurred and a new
 trial should be ordered because defense counsel in a trial
 referred to the ownership of a railroad crossing intersection in
 violation of the trial court's ruling on a motion *in limine* was
 not preserved for review by the Court of Appeals where plain-
 tiff never asked for a mistrial, did not ask for a new trial after
 the jury rendered its verdict against him, and there is no
 showing of manifest injustice.

5. Trial — Jury Instructions — Failure to Give Requested In-
 structions.

 A trial court's failure to give a requested jury instruction was not
 error where the requested instruction was not reduced to
 writing and filed as required by the court rules and the request
 was conditioned on the trial court's giving of an instruction
 proposed by the opposing party and that instruction was not
 given (GCR 1963, 516.1).

*Gagleard, Addis, Imbrunone & Gagleard* (by *Mi-chael A. Gagleard*), of counsel, and *Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, P.C.* (by *Sheldon L. Miller*), for plaintiff.

*Keil, Henneke, Ruhala, McKone & MacFarlane* (by *Robert P. Keil*), for defendant.

Before: Allen, P.J., and Hood and W. S. White,* JJ.

Per Curiam. Plaintiff appeals as of right from a jury verdict of no cause of action rendered against his claim that the defendant railroad company was negligent in failing to provide him with either safe equipment or a safe place to work. Plaintiff's claim was brought under the Federal Employers' Liability Act (FELA), 45 USC 51 *et seq.;* specifically under 45 USC 51, which grants a cause of action to a railroad company's employee if his or her on-the-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

job injury results in whole or in part from the negligence of any of the railroad company's agents or employees or by reason of any defect in its equipment, roadbed, or tracks due to its negligence. Michigan's circuit courts have concurrent jurisdiction with the federal district courts over these claims. 45 USC 56.

On July 20, 1978, at approximately 4 a.m., plaintiff was working for defendant as a "pointman", protecting one of defendant's gondola cars from oncoming traffic while it was being pushed across Chevrolet Drive in Flint by one of the defendant's engines. Apparently, the gondola could not be seen easily at night by oncoming motorists because it was covered with dirt and had a dull finish. As the gondola was crossing the intersection, Ralph Gordon Dominy came speeding toward the intersection on his motorcycle. Dominy, a truckdriver for Chevrolet for 15 years, had been drinking beer at a bar until it closed at 2 a.m., and, after the bar closed, continued to drink in the Chevrolet parking lot. Thinking he could not stop in time to avoid hitting the gondola, Dominy "gunned" his motorcycle to go around the gondola. As he started around the gondola, he saw plaintiff, who was waiving a lantern, but was unable to avoid striking him. As a result of the accident, plaintiff sustained serious injuries.

At the time of the accident at least five red lights mounted on cantilever arms protruding out over the intersection were flashing, bell signals were ringing and plaintiff and a fellow employee were each waiving a lantern. All witnesses who testified, except Dominy, stated that the flashers were on and operating at the time the accident occurred. Plaintiff filed suit against defendant Grand Trunk Western Railroad, Dominy and Gen-

eral Motors but, on the morning of the first day of trial, settled with Dominy and General Motors.[1]

At trial, plaintiff moved *in limine* to restrict defendant's introduction into evidence of a July 17, 1953, Public Service Commission (PSC) order. Defendant wished to show that, by statute, before a crossing gate could be placed or maintained on any highway, approval had to be first obtained from a duly authorized public body or official or authorized by statute. See MCl 257.615; MSA 9.2315. In 1953, this "public body" was the PSC. Today, jurisdiction over the placing or maintaining of these devices on public highways is in the railroad safety section of the Department of Highways and Transportation. MCl 247.822; MSA 9.216(102). Defendant argued that, because plaintiff was claiming that defendant should have installed crossing gates at this intersection, it should be able to place in evidence the PSC order showing that the PSC did not require more than warning lights at the intersection. Furthermore, defendant desired to show that, because it did not own the intersection, it could not seek to have the PSC require the placement of crossing gates at that location.

The trial court ruled that the 1953 PSC order, being defendant's exhibit F, could be introduced into evidence as a public document, but stated that the court would not permit defendant to disclose to the jury that General Motors owned the intersection. Nevertheless, during defense counsel's closing argument, while referring to defendant's exhibit F, counsel stated: "[A]s you can see from this exhibit,

---

[1] Plaintiff's claim against Dominy was predicated on Dominy's negligent and grossly negligent operation of his motorcycle. The claim against General Motors, which owned and maintained the Chevrolet Avenue crossing, was based on General Motors' alleged failure to properly maintain the crossing and flashers located at the crossing.

the crossing is owned and maintained by General Motors". At this point, the record reads:

*"Mr. Miller [plaintiff's counsel]:* Your Honor, I would object to that.

*"The Court:* I thought I instructed we were not to discuss ownership.

*"Mr. Keil [defense counsel]:* I'm sorry, your Honor.

*"Mr. Miller:* I would ask for a cautionary instruction that the railroad has the responsibility of keeping that crossing safe for Mr. Taubitz and did at the time of this accident.

*"The Court:* I will instruct at the end, but I clearly said there was not to be discussion of ownership because it's irrelevant; and you should pass that issue from your minds.

*"Mr. Keil:* I apologize, your Honor. I'm sorry. I was looking at the face sheet."

At the close of proofs, defendant requested jury instruction No. 8, which reads as follows:

"I further charge you that by statute in this state no one, including railroads, may erect or install any signs, signals or other devices, including gates at a railroad crossing unless the same have been ordered by the appropriate state agency (formerly the Railroad Division of the Public Service Commission and now the Railroad Safety Section of the Department of State Highways and Transportation)."

Plaintiff's counsel stated he had no objection so long as the trial court would give a corollary instruction that the railroad had a "nondelegable duty and that whether or not (the railroad) had control over the particular premises is not an issue". Counsel stated that both proposed instruction No. 8 and the nondelegable duty instruction "go hand in hand".

The trial court declined to give either instruc-

tion No. 8 or the orally requested "nondelegable duty" instruction, but did instruct the jury regarding the duty of the railroad to furnish its employee a safe place to work, as follows:

"It was the duty of the defendant, as an employer at the time and place in question, to use ordinary care in the * * * under the circumstances in furnishing plaintiff with a reasonably safe place in which to work and to use ordinary care under the circumstances to maintain and keep such place of work in a reasonably safe condition. The employer's duties included the duty to instruct its employees, including plaintiff, as to the safe method with which to perform their work. The employer's duty also included the duty to make and enforce adequate safety rules."

The trial court also gave the "Rogers" instruction (from *Rogers v Missouri Pacific R Co,* 352 US 500; 77 S Ct 443; 1 L Ed 2d 493 [1957]), which is unique to FELA litigation:

"For purposes of this action, injury or damage is said to be caused or contributed to by an act or failure to act when it appears from the preponderance of the evidence in the case that the act or omission played any part, *no matter how small,* in bringing about or actually causing the injury or damage. So if you find from the evidence in this case that any negligence of the defendant contributed *in any way* toward any injury or damage suffered by the plaintiff, you may find that such injury was caused by the defendant's act or omission. Stated another way, an act or omission is the cause of injury or damage if the injury would not have happened but for the act or omission, even though the act or omission combined with other causes." (Emphasis supplied.)

On September 22, 1982, the jury returned a verdict of no cause of action in favor of defendant.

On appeal plaintiff contends error requiring reversal occurred and a new trial should be ordered because (1) defense counsel in clear violation of the trial court's ruling on the motion *in limine* referred to General Motors' ownership of the intersection and (2) the trial court refused to instruct the jury that the railroad has a nondelegable duty to provide its employees with a reasonably safe place to work.

Despite appellate counsel's eloquent and skillful argument to the contrary, we are not at all persuaded that defense counsel's single reference to ownership of the intersection is grounds for reversal. The reference was casual, was not repeated, and in our opinion, any prejudice flowing therefrom was removed by the trial court's curative instruction. Also, during the court's subsequent instructions, the court explained to the jurors that, "Arguments, statements and remarks of attorneys are not evidence; and you should disregard anything said by an attorney which is not supported by evidence or by your own general knowledge and experience." Moreover, defendant's exhibit F on its face indicated that General Motors Corporation owned the railroad crossing in question, and the jurors had access to this exhibit because it was admitted into evidence. Accordingly, we find the error harmless.

Furthermore, plaintiff never asked for a mistrial, nor did he ask for a new trial after the jury rendered its verdict against him. Accordingly, this Court's language in *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969), seems well suited for the circumstances presented: "Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." While plaintiff recognized the potential for prejudice and did ask for a curative instruction, which was

granted, no request for a mistrial was made. Hence, again, absent a showing of manifest injustice, this issue has not been preserved for this Court's review. GCR 1963, 529.1. Because exhibit F on its face disclosed ownership, we see no manifest injustice.

We now turn to the second assigned ground for reversal, *viz.:* the trial court's failure to give an instruction that the railroad had a nondelegable duty to provide its employees with a safe place to work. As noted earlier, the instruction was verbally asked in general terms, but was never reduced to writing and filed as required by GCR 1963, 516.1. Moreover, plaintiff's verbal request was conditioned upon the trial court's giving defendant's proposed instruction No. 8. When the trial judge informed both counsel that he was "not giving instruction eight or am I giving the nondelegable duty", plaintiff's counsel did not object to the denial or renew his request for such an instruction. In fact, at trial plaintiff's counsel himself stated the instructions go "hand-in-hand". Now on appeal, plaintiff in effect is claiming that the two instructions should be separated. Under the circumstances, we believe plaintiff was correct the first time.

This is not a case where defendant has taken the position that it had delegated, or could delegate, to General Motors its duty to provide the injured employee a safe place to work. Both in his opening statement and during final argument defense counsel stated that under FELA it was the employer's duty to provide a reasonably safe place to work. Plaintiff relies on *Schiller v Penn Central Transportation Co,* 509 F2d 263 (CA 6, 1975), and *Carter v Union R Co,* 438 F2d 208 (CA 3, 1971), for the proposition that the jury should be instructed

that the employer's duty to provide a safe place to work is nondelegable. In each of those cases the defendant railroad had asserted that it had delegated, or could delegate, to another its FELA duty to provide a safe place to work and because of such delegation was not liable. Naturally, a jury instruction that the duty was nondelegable was necessary in those cases. But, that is not the situation here where the defendant railroad did not claim it could delegate its legal duty and where plaintiff did not pursue his request for such instruction.

Affirmed. Costs to defendant.