ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. ALLEN.

Opinion delivered June 8, 1908.

1.  MASTER AND SERVANT—FATAL INJURIES—FAILURE TO SECURE SURGICAL AID.—Where a brakeman received injuries which were necessarily fatal without fault on the railroad company's part, the company will not be liable for damages, though its conductor failed to use reasonable diligence to provide surgical assistance promptly. (Page 469.)

2.  APPEAL—REVERSAL—DISMISSAL.—Where appellee's counsel concedes that the case could not be more fully developed on another trial, and the evidence is found to be insufficient to sustain a recovery, the cause will be dismissed. (Page 469.)

Appeal from Pope Circuit Court; *J. Hugh Basham*, Judge; reversed.

STATEMENT BY THE COURT.

The deceased, F. L. Allen, was a brakeman on a freight train on appellant's road. On the 9th day of October, 1906, at Plummerville in Conway County, while engaged in switching,

the engine and one car of the freight train were backed over and upon said Allen, crushing, cutting and lacerating his right leg from the upper part of the thigh down to the knee. The accident occurred about 2:10 o'clock A. M. Immediately the conductor, with the station night watchman to show him the way, went to the house of Dr. A. R. Bradley, the local surgeon of appellant company at that point, to secure surgical attention. He was informed, when he arrived at Dr. Bradley's, that the doctor was in the country waiting upon a woman in a labor case, and that his return was uncertain. On their way back to the station, the night watchman told the conductor that the person who answered their summons at Dr. Bradley's was a young physician. The conductor did not return to secure his assistance, but went on to the station, and, after doing some necessary switching which occupied forty minutes, he placed Allen on the train and proceeded to Morrillton, the next station. The distance was five miles, and fifteen minutes were taken to make the run. Upon their arrival at Morrillton at 3:20 o'clock A. M., the conductor immediately applied for and found Dr. Adams, the company's surgeon at that point. Preparations were at once made for an operation, which began at 4 o'clock A. M., but the injured man did not recover, and died about 10 or 10:15 o'clock on the same morning.

Dr. Adams testified that the thigh was crushed, beginning just as high up as the thigh goes, commencing at the crest of the ilium, the hip bone, and extending from there down to below his knee. That all of the muscles, flesh, blood vessels and everything else were mashed or torn off. That the leg was broken into divers small pieces up to the "middle third" of the thigh. "That at this point of the leg (indicating about the upper third) the flesh was left on that, so that when the leg had to be taken off, the bone only had to be sawed off a short piece above the break, and upon a line with this mashed place here, and the flaps were obtained from below, the posterior, back part of the leg, and thrown over and stitched up here, so when we got through he had just about that much of a stump left (indicating). This crushing continued diagonally on down below the knee." The wheels of the car had struck him on the right leg, just on a line with his hip bone in front.

The testimony shows that about ninety per cent. of injuries of the character above described are fatal, and that death ensues from either the severe shock or from loss of blood, or from both causes combined.

The testimony shows that the injured man complained of being cold after he received the injury, and that he was covered up, and a fire built in the caboose to warm him. The conductor sat by his side on the way to Morrillton, and ministered to his wants as best he could. Other facts appear in the opinion.

Appellee brought suit for the benefit of the widow and next of kin against the appellant for damages on account of the injury and death of said F. L. Allen, and alleged as a cause of action the failure on the part of appellant to provide her intestate promptly with medical or surgical attention, which resulted in his death.

The allegations of the complaint were denied, and the cause was tried by a jury, and a verdict in favor of appellee for $4,500 was returned.

The case is here on appeal.

*Lovick P. Miles,* for appellant.

1. There was no cause of action under the act of March 6, 1883. She abandoned the right to recover on account of the original injury, and elected to sue solely upon the neglect to secure and render medical or surgical attention, such neglect being relied on as the proximate cause of death. For this appellee could not maintain a suit for the benefit of the widow and next of kin. 53 Ark. 117; 68 *Id.* 1; Tiffany on Death by Wrongful Act (Ed. 1893), § 63, citing 13 R. I. 651; 40 Ga. 52; 38 *Id.* 199.

2. Appellant was under no such legal obligation to provide surgical attention as would make it liable in case of failure to procure it. 65 Ark. 35; 53 *Id.* 377; 92 Ala. 258; 48 Kans. 654; 57 Am. Rep. 160; 52 Kans. 433.

3. The evidence does not warrant a recovery. It is not shown that the failure of the company was the proximate cause of death, nor that the deceased would have lived if attention had been immediately procured. The question of proximate cause and the legal sufficiency of the evidence are questions of law for the court. 33 Ark. 350; 55 *Id.* 510; 56 *Id.* 279; 58

*Id.* 157; 69 Id. 402; 76 *Id.* 434; 115 Mass. 304; 47 Ark. 97; 63 *Id.* 658, 76 Ia. 744; 83 Ark. 584.

4. No actionable negligence on the part of the conductor was shown.

*Charles C. Reid, W. P. Strait* and *W. L. Moose,* for appellee.

1. There was such a cause of action as appellee could maintain under the act of March 6, 1883. Kirby's Digest, § 6285; 53 Ark. 125, 126; 89 Miss. 321; 98 Ind. 73; 29 Md. 288.

2. Appellant was under such legal obligation to provide surgical attention to deceased as would involve it in legal liability in case of failure to provide it. 28 Mich. 289, 65 Ark. 300; 53 *Id.* 377; 98 Ind. 358; 82 Ill. 73; 89 Miss. 321; 29 Md. 441; 41 La. Am. 59; 70 Miss. 563; 79 *Id.* 361; 141 Ind. 73; 28 Mich. 289; 52 Ohio St. 564; 41 Md. 288; 33 Kans. 554.

3. The evidence warranted a recovery from any standpoint, and a verdict for appellant should not have been directed. 99 S. W. 200; 91 Ala. 496; 96 Ind. 346; 41 La. Ann. 59; 89 Miss. 89; 70 *Id.* 569; 83 Ala. 376; 3 Thompson on Negl. (2 Ed.), 2782; 83 Ark. 81; 73 *Id.* 570; 2 Bish. Crim. Law, § 639.

4. There was actionable negligence shown in the conduct of the conductor in charge. 88 Miss. 25; 87 *Id.* 237.

Hart, J., (after stating the facts). It is conceded that there is no actionable negligence which caused the original injury, and appellee bases her right of recovery in this action upon the failure of appellant company to use reasonable diligence to provide surgical assistance promptly in accordance with the urgency of the need, thereby causing the death of appellee's decedent. This statement puts the issue squarely, and the langage used is that of appellee's counsel. Assuming, without deciding the question, that the freight conductor was in the emergency shown in this case clothed with the powers and charged with the duty to provide surgical attention to deceased, so as to involve appellant in legal liability in case of failure to provide it, the uncontradicted evidence shows that the death of the injured man resulted from the original accident, and not from the delay that resulted in carrying him to Morrillton before surgical assistance was procured. All of the physicians testified that a large majority of cases like the present one are neces-

sarily fatal, ninety per cent. being the estimate made by most of them. They said his chances of recovery would have been enhanced, had he received surgical attention sooner, but none of them expressed the opinion that he would have recovered, or that death ensued from the delay in procuring a surgeon. It is manifest that the death of the injured man did not result from loss of blood. While considerable loss of blood would necessarily result from a wound of the kind received, the un-contradicted evidence shows the hemorrhage had nearly stopped when they reached Morrillton; and that only a very small quantity of blood was oozing from the wound. All the physicians testified that death would have ensued in ten or fifteen minutes from the loss of blood if the hemorrhage had not been checked by the blood coagulating. The coldness complained of by the injured man may have been caused by the severity of the shock; for the physicians testified that a sensation of coldness was produced by a severe shock as well as by loss of blood.

It was incumbent upon appellee, in order to recover in this case, to show that her intestate's death was caused by the delay in procuring surgical assistance. All the testimony that was introduced to meet this requirement was the testimony of the physicians that the injured man's chances of recovery would have been enhanced had surgical attention been given sooner, and the testimony of other witnesses that he was a strong able-bodied man. None of the evidence tended to show that he would have recovered, had he received medical attention sooner, or that the delay in procuring it was the proximate cause of his death.

Counsel for appellee in the oral argument of the case admitted that it could not be more fully developed in another trial. Therefore it is ordered that the judgment be reversed, and the cause dismissed.