PHILOMENA BUDD, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX *AD PROSEQUENDUM* OF THE ESTATE OF WILLIAM J. BUDD, DECEASED, PLAINTIFF, v. ERIE LACKAWANNA RAILROAD COMPANY, A NEW YORK CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.

Hudson County Court
Law Division

Decided December 6, 1966.

Mr. *Robert H. Wall,* attorney for plaintiff.

Mr. *Arthur J. Blake* for defendant (*Messrs. Lamb, Blake, Hutchinson & Dunne,* attorneys).

LYNCH, J. S. C. (temporarily assigned). In this matter, brought under the Federal Employers' Liability Act (hereinafter called "FELA"), 45 *U. S. C. A.* § 51 *et seq.,* the trial resulted in a jury verdict in favor of the plaintiff in the following amounts: (a) for the death of plaintiff's decedent husband in the sum of $58,500, and (b) for the pain and suffering of decedent prior to his death, in the amount of $6,000.[1]

The essential facts are as follows,

On October 26, 1962 plaintiff's decedent, while working as a clerk in the office of defendant railroad, suffered a myocardial infarction. His distress was known to his superiors, and a fellow employee requested decedent's immediate superior to obtain a doctor. None was obtained. Finally, de-

---

[1] The amount of the respective verdicts represented the net result after the jury's deduction of 25% from gross damages found in the amount of (a) $78,000 for death and (b) $8,000 for pain and suffering, the said 25% being the jury's estimate of the degree of decedent's contributory negligence, and by which damages are to be diminished pursuant to 45 *U. S. C. A.* § 53.

cedent decided to go home to see his own physician and, while being attended by him, died. This was approximately four hours after the original attack. The theory of negligence alleged against defendant was that it failed in its duty to render medical aid under the "humane instincts" doctrine expressed in *Szabo v. Pennsylvania R. R. Co.*, 132 *N. J. L.* 331 (*E. & A.* 1945).

Defendant moves for an order setting aside the jury verdict on grounds which may be summarized as follows: (1) the verdict is contrary to the weight of evidence, is the result of passion, prejudice, sympathy or bias and is contrary to law; (2) the court erred in submitting issues to the jury for consideration and in failing to grant defendant's motion at the end of plaintiff's and the entire case; (3) the court was in error in permitting into evidence the contract between the railroad and the union, and (4) the court erred in submitting the mortality tables to the jury for consideration.

At oral argument defendant was granted leave to file a brief in support of its position. The brief subsequently filed argued only with respect to grounds 2, 3 and 4, above. In considering the motion the court will deal first with those grounds and will thereafter treat ground 1.

### Re Defendant's Point I: "Plaintiff did not Prove That Any Alleged Negligence of Defendant was the Cause of Death."

Under this point defendant argues that plaintiff's case was deficient because "at no time during the trial did any one state that if * * * medical aid had been obtained plaintiff's decedent husband would have lived." Putting it another way, defendant argues that "there is no evidence that he would not have died anyway * * *."

Citing *Cowdrick v. Pennsylvania R. R. Co.*, 132 *N. J. L.* 131 (*E. & A.* 1944), *certiorari* denied 323 *U. S.* 799, 65 *S. Ct.* 555, 89 *L. Ed.* 637 (1945), defendant asserts the principle that in addition to proof of a wrongful act, plaintiff must also prove "the existence of such circumstances as would

justify the inference that her husband's death was caused thereby."

█ The question here is: what "cause" is sufficient under FELA? The test, established by the landmark case of *Rogers v. Missouri Pacific R. Co.*, 352 *U. S.* 500, 77 *S. Ct.* 443, 1 *L. Ed.* *2d* 493 (1957), is whether the negligence of defendant "played any part, even the slightest, in producing the * * * death for which damages are sought" (352 *U. S.*, at *p.* 506, 77 *S. Ct.*, at *p.* 448), or whether such negligence played any part "at all" in the death (at *p.* 507, 77 *S. Ct.*, at *p.* 443).

█ Thus, we are to measure the *quantum* of proof as to causation, not by those standards applicable to ordinary negligence cases, but by those more liberal standards applicable to an FELA action. As *Prosser, Law of Torts* (1964 *ed.*), *pp.* 560–561 says:

"The history of the Federal Employers' Liability Act * * * has been one of gradual but persistent liberalization in the direction of allowing the plaintiff to recover whenever he is injured in the course of his employment, as under a compensation act. Following a series of decisions in which the question of the railroad's negligence went to the jury although the evidence bearing upon it was circumstantial, sketchy, or the omission or departure from ordinary care was very slight, the Supreme Court finally declared that 'Under this statute the text [*sic*] of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury or death for which damages are sought.' This has been said to reduce the extent of the negligence required, as well as the quantum of proof necessary to establish it, to the 'vanishing point.' While it is still undoubtedly true that there must be some shreds of proof both of negligence and of causation, and that 'speculation, conjecture and possibilities' will not be enough, there appears to be little doubt that under the statute jury verdicts for the plaintiff can be sustained upon evidence which would not be sufficient in the ordinary negligence action."

█ Did, then, defendant's failure to provide medical care to decedent play "any part, even the slightest," in decedent's death? Dr. Arbeit, plaintiff's medical expert, testified that, "with reasonable medical probability" defendant's failure to supply medical aid "contributed" to aggravating his condi-

tion, "it worsened his prognosis," and also it was "self evident" that a delay in giving medical attention was "injurious" to the decedent's condition. The doctor further testified that, statistically, 25% of those suffering an acute myocardial infarction, such as decedent, die immediately. Of those who survive the initial assault, he said, 25% will die within the next five days, but after that the mortality for myocardial infarction, *per se,* "is virtually zero." From this testimony the jury could have inferred that decedent, having survived the initial assault, had a 75% chance, statistically, of avoiding death due to the infarction which he had suffered.

Defendant argues that on cross-examination Dr. Arbeit testified that he could not say that, if medical attention had been supplied, decedent would have survived. The doctor's testimony was that in "any one specific case" he could not say what the result would be, "but, as an overall statement of fact you could say that those who get medical care earlier have a better chance of surviving." However, he could not say, as to this particular decedent, whether he would have survived or not if the attention had been given. In this court's judgment, to deprive a person of that "chance" to be among the group who, after five days, generally survive the attack does, indeed, "play a part" in bringing about his death.

Defendant would require that there be affirmative evidence on plaintiff's part that decedent would have lived if he had been given medical attention, and that he would not have died "anyway." To require such expert prescience in the context of a heart case goes beyond the standard required by *Rogers, supra.* We must recognize that there can be no such medical certainty, for there are too many imponderables, once given the heart condition. As Dr. Arbeit said, no one can say what the result would be had medical attention been given. Because no such medical certainty exists, is a railroad employee,[2] who dies and whose employer has failed in a duty

---

[2] More properly, the employee's dependents.

owed to him, to be deprived of the benefits of FELA — an act which is construed as being akin to a workmen's compensation law? *Cf. Prosser, supra*, § 82, *p*. 560. Not so long as proofs support the inference that the employer's negligence "played a part" in producing the death. The proofs here meet that standard.

Defendant cites the case of *St. Louis, I. M. & S. R. Co. v. Allen*, 86 *Ark*. 465, 111 *S. W*. 802 (*Sup. Ct*. 1908). That case was decided in 1908, approximately 50 years before the liberal rule was established in *Rogers*. Further, in *Allen* the court said:

"* * * the *uncontradicted* evidence shows that the death of the injured man resulted from the original accident and not from the delay that resulted in carrying him to Morrilton before surgical assistance was procured." (Emphasis added)

Here the testimony was by no means "uncontradicted" that decedent's death resulted from the original heart attack or that he would have died "anyway." In *Allen* the proofs were that about 90% of the cases with physical injuries such as suffered by the plaintiff therein "are necessarily fatal." Here the testimony of Dr. Arbeit was to the effect that 75% of the cases of those who survive the initial assault will live, the remaining 25% will die within five days, and after that the mortality for myocardial infarction, *per se*, "is virtually zero." *Rogers* held that the employee's burden is met, and the obligation of the employer to pay damages arises, "when there is proof, even though entirely circumstantial, from which the jury may with reason make * * * [the] * * * inference" that the negligence of the employer played any part, however small, in the death. In *Allen* a jury could not reasonably infer from the evidence that recovery probably would have occurred if treatment had been given. On the proofs here the jury could with reason make that inference.

Re Defendant's Point II : "The Admission into Evidence of the Contract between the Union and the Railroad was Error."

■ Under this point defendant argues that the admission into evidence of the contract between the railroad and the union, of which decedent was a member, changed the theory of the trial from one of negligence to one of breach of contract. The agreement provided, in effect, that when an employee is taken ill he "shall be given medical treatment as soon as possible." Where one voluntarily undertakes to aid in the care of an injured employee, he accepts the obligation of using due care for his safety and welfare. *Bascho v. Pennsylvania R. R. Co.*, 3 *N. J. Super.* 86, 92 (*App. Div.* 1949); *Dudley v. Victor Lynn Lines, Inc.*, 48 *N. J. Super.* 457, 469 (*App. Div.* 1958), reversed on other grounds 32 *N. J.* 479 (*Sup. Ct.* 1960), but see *page* 495 where the same principle is approved. The written undertaking by defendant as expressed in the union contract was another element of the issue, as to whether, under all the circumstances, defendant exercised that due care.

■■ Defendant argues that the admission of the contract changed the duty which defendant owed to plaintiff from one merely to exercise reasonable care to one of a contract obligation. A railroad's work rules are admissible in a negligence action brought under FELA and do not change the theory of the action into one of contract, but are relevant to the issue of negligence, upon the theory that where one voluntarily undertakes to care for an injured employee, he owes the duty of exercising reasonable care in fulfilling his undertaking. *Bascho v. Pennsylvania R. R. Co., supra,* 3 *N. J. Super.,* at *p.* 92. See also *Dudley v. Victor Lynn Lines, Inc., supra,* 48 *N. J. Super.,* at *pp.* 468–471. This is an issue, not of contract as urged by defendant, but of negligence.

In *Wendell v. Pennsylvania R. R. Co.*, 57 *N. J. L.* 467 (*Sup. Ct.* 1895), defendant railroad contended that any promise which it may have made to give notice to plaintiff employee of an approach of trains could not be urged against it in an action against the employer railroad based upon negligence. It contended that the alleged contract or promise was not based upon any legal consideration and was therefore not

enforceable. In disposing of this argument Chief Justice Beasley said:

"This may be so, but how does that circumstance affect this suit? This proceeding is not for the purpose of enforcing any contract between these parties. It is in tort, and sets up the misconduct of the defendants, the gravamen being that they negligently ran their trains over this subway, and thence came the hurt of the plaintiff. The situation, then, is this: The plaintiff was lawfully in this subway, and with the assent of these companies. Both they and he knew it was a place of danger when trains passed over it, and he *had been assured by them that he would be warned of their approach.* With this knowledge, the companies ran their trains without the promised notice, and thereby the injury was inflicted that forms the foundation of the action. The court is of opinion that this act of the companies was actionable *negligence.* * * *" (at *pp.* 469–470; emphasis added)

In *Blanchard v. Vermont Shade Roller Co.,* 84 *Vt.* 442, 79 *A.* 911 (*Sup. Ct.* 1911), plaintiff alleged that defendant's superintendent promised to be on the look-out for plaintiff's safety and he failed to do so, resulting in plaintiff's injuries. Defendant contended that the count based upon the promise of the superintendent was one in *assumpsit* and was improperly joined with other counts in the complaint. The court held to the contrary, saying:

"It is true that the special duty relied upon was the fulfillment of a promise to take certain action for the plaintiff's safety, and that the defendant is alleged so to have agreed, promised, and assumed. But the use of these words in this connection and with reference to such an undertaking does not determine the nature of the declaration. It is argued that a breach is alleged; but the nonfulfillment of the undertaking is necessarily alleged to establish the negligence." (79 *A.,* at *p.* 914)

This court holds, therefore, that it was not error to admit into evidence the pertinent provisions of the union contract referred to above.

RE DEFENDANT'S POINT III: "THE COURT ERRED IN SUBMITTING THE MORTALITY TABLES TO THE JURY FOR CONSIDERATION."

Defendant argues that the submission of the mortality tables to the jury constituted prejudicial error, for the reason that plaintiff's decedent had had a heart attack and that the tables were therefore irrelevant.

The jury was advised that decedent was 47 years of age at the time of his death, and that an *average* person of that age would have an expectancy of life of 25.42 years. However, the court in its charge emphasized that the figure thus given was that of the normal life expectancy of "average persons." The court cautioned the jury to pay *particular attention* to its instructions as to the limited use it was to make of the tables; that the jury was "entitled" to consider the mortality tables if they thought it was proper to do so under all of the testimony, subject to the limitations explained by the court, and was to find "what you believe would have been the reasonable expectancy of life of Mr. Budd in the circumstances existent on October 26, 1962" and after he had suffered the attack described in the testimony. The court repeated the warning that the mortality tables were not binding with respect to the decedent's expectancy of life, and it was for the jury to determine what that might reasonably be under all the circumstances, including the fact that he had suffered a heart attack.

Under such instructions, specifically calling the jury's attention to decedent's particular condition, reference to the mortality tables was proper. *Auer v. Sinclair Refining Co.*, 103 *N. J. L.* 372 (*E. & A.* 1927); *Dickerson v. Mutual Grocery Co.*, 100 *N. J. L.* 118 (*E. & A.* 1924); *Camden & A. R. Co. v. Williams*, 61 *N. J. L.* 646 (*E. & A.* 1898).

RE DEFENDANT'S ARGUMENT THAT IT "CLEARLY AND CONVINCINGLY APPEARS THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE AND THE RESULT OF MISTAKE, PARTIALITY, PREJUDICE OR PASSION."

With respect to defendant's contention that the verdict should be set aside as against the weight of the evi-

dence, the court is of the opinion that there was ample evidence to support the verdict, both with respect to liability and damages. On defendant's motion for a new trial the court may not substitute its own judgment for that of the jury. Only when the sole conclusion to be drawn from the verdict is that it was the result of passion, partiality, prejudice or mistake may the trial court set it aside. *Shutka v. Pennsylvania R. R. Co.*, 74 *N. J. Super.* 381, 406 (*App. Div.* 1962); *Hager v. Weber*, 7 *N. J.* 201, 210 (1951); *Andryishyn v. Ballinger*, 61 *N. J. Super.* 386, 393, 394 (*App. Div.* 1960). And see *R. R.* 4:61–1(a). This court finds that there is no support for defendant's contention that the verdict could not have been rendered in the absence of such passion, partiality, prejudice or mistake. The evidence in this case was sufficient to permit the jury to find that decedent was taken ill while at work in his office and in the presence of a supervisor; that the supervisor was well aware of the emergent nature of his condition, and that in those circumstances defendant was under a duty to put in his reach such medical care and other assistance as the emergency required, so that his life might have been saved or his illness not been further aggravated. *Szabo v. Pennsylvania R. R. Co., supra.* From the evidence the jury could likewise have inferred that the defendant failed in the exercise of the duty thus imposed upon it. As to the question of liability,[3] the court finds that it does not appear that the verdict was against the weight of the evidence or the result of mistake, partiality, prejudice or passion.

Likewise, with respect to the question of the verdict in the amount of $58,000 on the death claim, we are constrained by the dictates of our appellate courts that a verdict shall not be set aside on the ground that it is excessive unless the sole conclusion to be drawn from the jury's verdict is that it was the result of passion, partiality, prejudice or mistake. *Andryishyn v. Ballinger, supra.* Here the

[3] The question of "causation" has been treated *supra.*

evidence was that for the ten months preceding his death in the year 1962, decedent had a net income from his employment of approximately $6,000. There was some evidence that since his death decedent's job rank has received an increase in salary. His widow testified that decedent used only $15 per week, or approximately $780 per year, for himself. There was testimony that from the remaining moneys there were certain deductions for living, household expenses, payment of insurance, fire insurance and other expenses for the upkeep of the house in which the decedent lived with his family, many of which items may concededly have been reduced after plaintiff's death. The court cannot speculate as to what expectancy of life the jury determined was to be decedent's, had he lived and provided he had received medical aid. Neither can it say that the amount of the verdict for the death claim is so clearly and convincingly against the weight of the evidence as to evince mistake, partiality, prejudice or passion.

With respect to the verdict in the amount of $6,000 for decedent's pain and suffering before his death, again the court cannot substitute its judgment for that of the jury. Needless to say, there is no exact rule by which such damages can be measured. The pain accompanying an attack such as decedent had was described by one physician as being "excruciating." If medical attention had been given undoubtedly anaesthetic procedures would have eased the effect. The amount awarded by the jury does not shock the conscience of the court to the extent that it requires setting aside or reduction of the verdict. Neither verdict, therefore, will be disturbed.

Defendant's motion is denied. Submit order conforming to R. R. 4:55–1.