STANLEY WICKS, PLAINTIFF-APPELLANT, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT-RESPONDENT.

HERBERT HUBER AND JENNIE HUBER, PLAINTIFFS-APPELLANTS, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued October 11 and 24, 1972—Decided November 20, 1972.

554

*Mr. Francis Sorin* argued the cause for appellants.

*Mr. Prospero De Bona* argued the cause for respondent (*Messrs. Milton, Keane & De Bona,* attorneys).

The opinion of the Court was delivered by

SULLIVAN, P. J. A. D., Temporarily Assigned. In separate actions brought under the Federal Employers' Liability Act (F. E. L. A.), 45 *U. S. C. A.* § 51, *et seq.,* plaintiffs Herbert Huber and Stanley Wicks, the fireman and engineer respectively on a Central Railroad of New Jersey train, sought damages against their employer for injuries received in a derailment accident.

At the jury trial of the consolidated cases, after both sides had rested their presentation of evidence, the trial judge granted defendant's motion for judgment, *R.* 4:40–1,

on the ground that a jury issue as to defendant's negligence had not been proved. The Appellate Division affirmed in an unreported opinion. This Court granted plaintiffs' petition for certification. 60 *N. J.* 288 (1972).

The accident happened shortly after midnight on October 17, 1966 during a train run from Bridgeton, N. J. to Jersey City. The train, consisting of two diesel-electric engines and 24 cars loaded with sand, had reached the vicinity of Chatsworth, Woodland Township, Burlington County. This portion of the route was over a single track line through a wooded section with bushes and small trees growing close to the track. Permissible train speed in this area was 40 m.p.h. At this point there was a railroad siding into Betz Laboratory curving sharply to the left from the main track. Access to the siding was had by means of a switch located in the main track. The switch lever was secured by a lock which prevented it from being operated unless the lock was removed. The mechanism also included a low pointer target over the switchstand which indicated whether the switch was open or closed. The switch had been locked in a closed position leaving the main track clear for passage. However, some 36 hours prior to the accident four boys had pried the lock open, thrown the switch so that a train would run into the siding, and then replaced the lock.

Huber and Wick had been over the route on prior occasions and were aware of the siding and the switch. Huber, as fireman, sat on the left side of the engine. His duties included observing conditions ahead, including signals and switches, which he was to call to the engineer's attention. Huber testified that there was no indicator or target on this particular switch. (Photographs of the switch marked in evidence on defendant's case show that actually there was a low pointer or target over the switch stand.)

Wick also testified that there was no target on the switch and that he was unable to see the lever for the switch because the switchstand was down in the bushes. He had re-

ported to his superiors that "the switch wasn't visible. No target on it," and that it was a dangerous condition.

Both Huber and Wick testified that as they approached the siding on the night in question, with the headlight of the engine shining down the track, they were unable to tell by looking at the track whether the switch was open or closed. On cross-examination Huber was confronted with his deposition that when "we were just about on it, you know, say, approximately four car-lengths or five car-lengths when you could see it was wrong." However, he attributed his deposition to possible misunderstanding on his part and insisted that he could not see the position of the switch prior to the accident.

It appears to be undisputed that the train travelling at about 35 m.p.h. as it passed through the switch, was shunted sharply to the left onto the siding causing the engine to derail and fall over on its side.

The trial court found no evidence of negligence on the part of defendant railroad, and in particular no proof that in the operation of its facilities defendant had violated any established rule or standard of care. It held that the accident was caused solely by the boys' vandalism which defendant had no reason to anticipate.

We conclude that a factual issue as to defendant's liability was presented and that the trial court should have allowed the case to go to the jury.

The standard to be applied in determining whether or not a plaintiff has made out a *prima facie* case of liability under the Federal Employers' Liability Act is set forth in *Rogers v. Missouri Pac. Ry. Co.*, 352 *U. S.* 500, 77 *S. Ct.* 443, 1 *L. Ed.* 2d 493 (1957), as follows:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's con-

tributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence. (Emphasis added.)

The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." 352 *U. S.* at 506–508, 77 S. Ct. at 448–449, 1 *L. Ed.* 2d at 499–500.

In the same case, in commenting on the duty of the court to effectuate the intention of the Congress to secure the right to a jury determination in a suit under the Act, the court said:

"[T]he Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. Special and important reasons for the grant of certiorari in these cases are certainly present when lower federal and state courts persistently deprive litigants of their right to a jury determination." 352 *U. S.* at 510, 77 S. Ct. at 450–451, 1 *L. Ed.* 2d at 501–502.

■ The evidence at trial clearly presented a jury issue as to defendant's liability under the act. *Budd v. Erie Lackawanna R. R. Co.,* 98 *N. J. Super.* 47 (App. Div. 1967). A railroad has the non-delegable duty to provide its employees with a safe place to work. This duty encompasses equipment and facilities which the employee must use or rely on

in the performance of his duties. *Shenker v. Baltimore & Ohio R. Co.,* 374 *U. S.* 1, 83 S. Ct. 1667, 10 *L. Ed.* 2d 709 (1963).

Both plaintiffs testified that there was no target on the switch. (While the photographs in evidence demonstrated this was erroneous, the question remained whether the target was sufficiently visible in view of the bushes and undergrowth near it.) Wick had reported to his superiors that the condition was dangerous because of the inability to see whether the switch was open or shut. In the circumstances, it was not incumbent on plaintiffs to present expert testimony of a standard of care. The danger of accident because of inability to see a switch signal would be a matter of common knowledge.

Whether defendant was negligent in not clearing out the bushes and undergrowth around the switchstand, or in not installing a more visible indicator or target, was a jury question. *Cf. Cleghorn v. Terminal Railroad Assn.,* 289 *S. W.* 2d 13 (S. Ct. Mo. 1956). The fact that the boys' vandalism may have been the immediate cause of the accident is beside the point. So long as defendant's negligence "played any part, even the slightest" in the mishap, it is liable.

On appeal to this Court plaintiffs assert additional bases of liability, not advanced at pretrial or trial, as follows:

The alleged failure of defendant to inspect and maintain the track and switch for a period of 36 hours after the acts of vandalism is claimed to have been a breach of defendant's duty to furnish plaintiffs with a safe place to work.

Plaintiffs also assert charges of negligence against each other for which they claim defendant would be vicariously responsible. In this vein it is argued that a jury could have found that Wick was negligent in operating the train through a switch when he was unable to see whether it was open or closed, and which he had previously reported to his superiors as a dangerous condition. Huber's alleged negligence is bottomed on his failure to have warned the engineer

of the open switch when, according to his deposition, he observed the condition some four or five car-lengths away.

Since we are remanding the matter for a new trial, plaintiffs will have leave to amend the pretrial order to add the additional charges of negligence asserted in their petition for certification. However, insofar as charges of Huber's and Wick's respective negligence and defendant's vicarious responsibility therefor are concerned, it is clear that plaintiffs' continued representation by the same attorney would involve a substantial conflict of interest and would not be permissible.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for further proceedings in conformity with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN, and Judges CONFORD and SULLIVAN—7.

*For affirmance*—None.