142 N.J. Super. 195 (1976)
361 A.2d 62
GEORGE A. FOOTE, PLAINTIFF-RESPONDENT,
v.
ERIE LACKAWANNA RAILWAY COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1976.
Decided June 7, 1976.
*197 Before Judges HALPERN, CRANE and MICHELS.
Mr. Joseph T. Ryan argued the cause for appellant (Messrs. Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys; Mr. Frank L. Brunetti on the brief).
Mr. Francis X. Kennelly argued the cause for respondent (Messrs. Schumann, Hession, Kennelly & Dorment, attorneys; Mr. Kenneth J. Quinn on the brief).
The opinion of the court was delivered by MICHELS, J.A.D.
Plaintiff, a yardmaster employed by defendant, instituted this action under the Federal Employers' Liability Act (F.E.L.A.), 45 U.S.C.A. § 51 et seq., to recover damages for personal injuries sustained during the course of his employment at the "Hoboken Float Bridge" in Jersey City, New Jersey. Following a lengthy trial a jury answered special interrogatories finding defendant negligent, and assessed plaintiff's damage at $179,000. The jury also found 25% of this damage attributable to plaintiff's contributory negligence and after making the necessary computation awarded plaintiff damages in the sum of $134,250. Defendant's *198 motions for a judgment notwithstanding the verdict or alternatively for a new trial on the ground of plaintiff's alleged improper summation were denied by the trial court. This appeal followed.
The facts are not in substantial dispute. On March 24, 1971 plaintiff was employed at defendant's Jersey City facility directing the movement of railroad freight cars from the railroad yard onto a car float destined for shipment across the Hudson River to New York. A car float is a long, narrow barge-type vessel with two sets of parallel tracks laid on its deck. One set of tracks runs down the starboard side and the other down the port side of the float. The float must be loaded in such a manner as to maintain a proper balance of the float. As the float is loaded on one side, it tends to list towards that side. The float could roll over under such conditions and, in fact, on occasion a float has rolled over, dumping its cargo into the river. The procedure to follow in loading the float, therefore, is to place only one-half of the number of cars that a float is to transport on the float initially. This is done by placing half of those cars on one side of the float and then an equal number on the opposite site of the float. This maintains the balance of the float. The remaining cars to be transported are then placed on the float in a similar fashion.
The float is connected to the yard at the Jersey City facility by a structure known as a float bridge. This structure contains two sets of tracks which can be aligned with the tracks on the float on the one end and with the tracks in the yard on the other end. The float bridge is built on pontoons so that it can rise and fall with the tide, just as the car float does.
On the morning of the accident plaintiff had ordered the conductor and brakeman operating a switching engine to load a car float. Three or four railroad cars had been placed on the tracks on one side of the float. The engine with the balance of the railroad cars had been backed off the float *199 bridge. As the train was moving in a westerly direction in order to clear the cross-over switches which permit the movement of the trains from the tracks in the yard to the tracks on float bridges, one of the railroad cars derailed. The derailment occurred at a point which blocked both sets of tracks on the float bridge to which the float being loaded was attached. Thus, no other railroad cars could be placed on the opposite side of the float to balance the three or four cars already on the float, and there was no way to remove the cars that were already on the float. As a result the car float was listing, and plaintiff thought that the float would turn over. The derailed car had to be rerailed as quickly as possible so that the float could be balanced to eliminate the risk of the float rolling over.
Plaintiff determined that "quite a bit of blocking" would be needed to rerail the derailed car and immediately called the Croxton Yard for defendant's wrecking truck and crew. The wrecking truck and crew work out of the Croxton Yard and are the only wrecking truck and crew maintained by defendant for the entire New York Division which extends from Jersey City to Mahwah, New Jersey, and includes the 28th Street Yard in New York. Plaintiff was advised that the wrecking crew was at Dock 8, about 2 1/2 blocks away. He then ordered an inspector to go to Dock 8 to get the wrecking truck and crew. However, the wrecking truck and crew had already left the area and were not available to help. Plaintiff immediately called John Elser, the yardmaster of the next railroad yard, to help rerail the car. Elser arrived with his yard crew and together with plaintiff attempted to rerail the railroad car. Although plaintiff and Elser were not required to do physical labor such as rerailing derailed cars, they as well as all employees were expected by defendant to pitch in and help when a derailment occurred creating an emergency situation such as confronted plaintiff during the loading of the float car. Moreover, the rules of defendant's Operating Department specifically provide that "In case of *200 danger to the company's property, employees must unite to protect it." As a result of the emergency created by the derailment, plaintiff pitched in and assisted Elser and his crew in rerailing the car. Plaintiff carried one of the 20 or 25 pound blocks to be used to get the wheels of the derailed car back on the track from the work car to the derailed car which was a distance of about 50 feet. He carried the block on his shoulder and then bent over and shoved the block off his shoulder in order to place it under the derailed car. Plaintiff felt something snap in his back and was unable to straighten up. As a result of this accident, plaintiff sustained serious personal injuries and subsequently instituted this action to recover damages under the Federal Employers' Liability Act. He charged that defendant failed to provide him with a reasonably safe place to work in that defendant did not furnish him with a wrecking crew and equipment readily available to assist in rerailing the railroad car following the derailment.
Defendant contends on this appeal that (1) its motion for judgment notwithstanding the verdict should have been granted because there was insufficient proof submitted by plaintiff to allow the case to go to the jury on the issue of negligence; (2) alternatively, its motion for a new trial should have been granted by reason of the inflammatory and improper summation of plaintiff's counsel, and (3) a new trial should have been granted because the trial court erred in permitting testimony as to plaintiff's gross earnings and in prohibiting cross-examination of plaintiff's expert with respect to plaintiff's tax liability. Defendant's attorney informed us at oral argument that in the event we did not reverse the judgment for the reasons set forth in its first two contentions, defendant abandons its claim that a new trial should be granted by reason of the claimed trial error concerning plaintiff's gross earnings and tax liability thereon.
Defendant claims that plaintiff failed to present sufficient evidence of either negligence or causation to create a jury question under the Federal Employers' Liability Act, *201 45 U.S.C.A. § 51, et seq. The rights created and the obligations imposed by the act are determined by reference to federal rather than local rules of law. Bailey v. Central Vermont R. Co., 319 U.S. 350, 352, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444, 1447 (1943); Chesapeake & O.R. Co. v. Kuhn, 284 U.S. 44, 46-47, 52 S.Ct. 45, 46, 76 L.Ed. 157, 160 (1931). See Pelliccioni v. Schuyler Packing Co., 140 N.J. Super. 190 (App. Div. 1976). Section 1 of the act, in pertinent part, provides:
Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. [45 U.S.C.A. § 51]
The standard to be applied in determining whether or not plaintiff has made out a prima facie case of liability under the Federal Employers' Liability Act is set forth by the United States Supreme Court in Rogers v. Missouri P.R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), as follows:
Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due "in whole or in part" to its negligence. [Emphasis supplied]
*202 The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence.
The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference. [352 U.S. at 506-508, 77 S.Ct. at 448, 1 L.Ed.2d at 499-500]
The Supreme Court has clearly stated in Rogers v. Missouri P.R. Co., supra, that the power of decision in F.E.L.A. cases is exclusively for the jury
* * * in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. [352 U.S. at 510, 77 S.Ct. at 450, 1 L.Ed.2d at 501-502]
The Court of Appeals for the Third Circuit, commenting upon this standard in Pehowic v. Erie Lackawanna Railroad Co., 430 F. 2d 697 (1970), stated:
A review of the decisions of the Supreme Court with reference to the integrity of the jury's function in these cases, keeping in mind the purposes of the Act and the liberal construction given it, teaches that a trial court is justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee. [at 699-700]
See also Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 116-117, 83 S.Ct. 659, 664-665, 9 L.Ed.2d 618, 625 (1963); Daniel v. Pittsburgh & Lake Erie R.R. Co., 389 F.2d 922, 923-924 (3 Cir.1968); Albergo v. Reading Co., 372 F.2d 83, 85 (3 Cir.1966), cert. den. 386 U.S. 983, 87 S.Ct. 1284, 18 L.Ed.2d 232 (1967); Wicks v. Central R.R. *203 Co. of N.J., 61 N.J. 553, 557-558 (1972); Budd v. Erie Lackawanna R.R. Co., 98 N.J. Super. 47, 57-58 (App. Div. 1967), certif. den. 51 N.J. 186 (1968). Cf. Zegan v. Central R.R. Co. of N.J., 266 F.2d 101, 104 (3 Cir.1959).
Applying the standard set forth by the United States Supreme Court to the record under review, we have no hesitancy in concluding that the evidence at trial clearly presented a jury issue as to defendant's liability under the Federal Employers' Liability Act.
It is beyond dispute that a railroad has a nondelegable duty to provide its employees with a safe place to work. Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 7, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709, 714-715 (1963); Bailey v. Central Vermont R. Co., supra, at 319 U.S. 353, at 63 S.Ct. 1064, at 87 L.Ed. 1447; Pehowic v. Erie Lackawanna R.R. Co., supra at 699; Sano v. Pennsylvania R.R. Co., 282 F.2d 936, 937 (3 Cir.1960). This duty encompasses equipment and facilities which the employee must use or rely on in the performance of his duties. See Shenker v. Baltimore & Ohio R. Co., supra; Wicks v. Central R.R. Co. of N.J., supra, 61 N.J. at 558-559. It also includes within its scope the duty of furnishing the employee with adequate help for the safe performance of his work. Cf. Heater v. Chesapeake and Ohio Ry. Co., 497 F.2d 1243, 1247 (7 Cir.1974), cert. den. 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed. 2d 287 (1974); Ross v. Chesapeake & Ohio Ry. Co., 421 F.2d 328, 330 (6 Cir.1970).
The liability of the railroad, however, is not absolute. Liability under the Federal Employers' Liability Act is based on negligence (Brady v. Southern R. Co., 320 U.S. 476, 484, 64 S.Ct. 232, 236, 88 L.Ed. 239, 245 (1943); Sano v. Pennsyvania R.R. Co., supra at 937, 938; Dessi v. Pennsylvania R.R. Co., 251 F.2d 149, 150 (3 Cir.1958), cert. den. 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958); Burch v. Reading Co., 240 F.2d 574, 580 (3 Cir.1957), cert. den. 353 U.S. 965, 77 Sup. Ct. *204 1049, 1 L.Ed.2d 914 (1957)), and reasonable foreseeability of harm is an essential ingredient of negligence. Gallick v. Baltimore & Ohio R. Co., supra, at 372 U.S. 117, at 83 S.Ct. 665, at 9 L.Ed.2d 626.
The evidence established that defendant was chargeable with knowledge that if a derailment occurred at its Jersey City facility during the loading operation which blocked the movement of trains on and off a car float when it was out of balance, its property would be in jeopardy, requiring immediate action by its employees, including yardmasters. Since defendant maintained only one wrecking truck and crew for the entire New York Division, there was a reasonable probability that such truck and crew would not be available to respond to such emergency, and that plaintiff would pitch in and help rerail the derailed car. Defendant expected, if not required, that plaintiff do this. In the circumstances it is not unreasonable to conclude that some injury to plaintiff was reasonably foreseeably by defendant. Thus, the proofs justify with reason the conclusion that defendant's negligence played a part in producing the injury sustained by plaintiff. At the very least, reasonable minds could differ on the resolution of these issues. Accordingly, Judge Geronimo properly submitted the case to the jury and properly denied defendant's motion for judgment notwithstanding the verdict.
We are also satisfied that the trial judge properly denied defendant's motion for a new trial based on a claim that the summation made by plaintiff's attorney was so improper and inflammatory that it denied it a fair trial. While the statements made were improper, the trial judge sustained defendant's objection to them. No real prejudice resulted. Particularly is this true because the case was submitted to the jury following a clear and comprehensive charge in which the trial judge instructed the jury that its "determination of the facts in this case is to be based solely on the evidence" and emphasized that the jury was the sole judge of the facts and should disregard statements as to the *205 facts made by both attorneys "in the opening remarks, through the course of the trial, and in summations" if those statements did not coincide with the jurors' own recollection of the evidence. State v. Stulman, 136 N.J. Super. 148, 162-163 (1975). There was no miscarriage of justice under the law. R. 2:10-1.
Accordingly, the judgment in favor of plaintiff and the order denying defendant's motions for judgment notwithstanding the verdict and for a new trial are affirmed.