HELENE N. WHITE,
dissenting.
The majority opinion lays out the governing legal principles clearly and accurately, and makes an appealing argument for reversal. I respectfully dissent, however, because viewing the evidence in the light most favorable to defendant, and drawing all permissible inferences from that evidence in the same light, no reasonable jury could fail to conclude that crew fatigue played some part in the accident, however slight.
As the majority acknowledges, causation under the Jones Act differs from causation as generally understood in negligence law. Under the Jones Act, which adopted the very minimal causation test of the analogous Federal Employers’ Liability Act (FELA), the causation inquiry is whether the employer’s negligence “played any part, even the slightest, in producing the injury ... for which damages are sought.” See Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 505, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) (emphasis added) (discussing causation under the FELA); see also Miller v. Am. President Lines, Ltd., 989 F.2d 1450, 1463 (6th Cir. 1993) (citing Gosnell v. Sea-Land Serv., Inc., 782 F.2d 464, 467 (4th Cir. 1986)) (“Under the Jones Act, a plaintiff need only show that the defendant’s negligence, however slight, contributed in some way toward causing the plaintiffs injuries.”). Although this standard is not strict liability, it is “featherweight.” Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996); Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 213 (3rd Cir. 1993).
The Jones Act provides that crew members on Great Lakes towing vessels may only be required to work 8 hours a day. Further, the Act prohibits crew members from working more than 15 hours in a 24-hour period, or 36 hours in a 72-hour period, regardless of their willingness to work longer. 46 U.S.C. § 8104(c).
Working excessive hours on a commercial vessel causes fatigue, endangering crew, non-crew, and property. Section 8104(c) is a safety statute intended to forestall that danger. Here, Ghaleb worked 21 of the 24 hours preceding his accident (Ghaleb Time Sheets, RR. 79-21, 79-22); Chief Warren worked 18 of the 24 hours preceding the accident (Chief Warren Time Sheets, R. 79-13, PID 1459-60); Al-Qasemi worked 20.5 of the preceding 24 hours (Al-Qasemi Time Sheets, Joint Ex. BB); and Ahmed worked 17 of the preceding 24 hours (Chief Warren Trial Tr., R. 115, PID 3830-31).[1] The question for the jury was whether crew fatigue caused by *552 these excessive work hours played “even the slightest” part in causing the accident. And the question for the district court on plaintiffs motion for judgment as a matter of law (JMOL) was whether a reasonable jury could fail to find that crew fatigue had some causal effect, however slight, on plaintiffs accident. A reasonable jury could not have so found.
The crew’s hours were not minor deviations from a strict statutory standard that may or may not have resulted in actual fatigue. To the contrary, ordinary, common experience would not only permit, but also compel, a trier of fact to find that the crew involved in the accident, who had worked well beyond the statutory limitations, were fatigued at the time of the accident.
The unrebutted facts of plaintiffs negligence per se claim are that plaintiff stood in a position on the deck that put him in the path of the cable; Ahmed dropped the cable, precipitating the accident; and at the time of the accident, plaintiff, Chief Warren, Al-Qasemi, and Ahmed had all worked well in excess of the statute’s maximum hours. Despite their fatigue, plaintiff, Chief Warren, A-Qasemi, and Ahmed engaged in a potentially dangerous, physically challenging maneuver involving a heavy cable and at least some ice on the deck. Ahmed was the first crew member to drop the cable, setting the accident into motion. Focusing just on Ahmed, if fatigue was even a slight cause for his slipping and dropping the cable, that would suffice to establish Jones Act causation. In his deposition, which was read to the jury, Ahmed testified: “I’m the first person who I slipped [sic], I drop the cable, too. The cable went down, it was going fast because it was already going down and it’s heavy.” Ahmed Dep., R. 101-2, PID 2315. Ahmed further testified that “[everybody was trying to leave to go home ... [everybody was in a hurry,” and that the cable was “heavy, very heavy.” Id. at PID 2327-28. The deck, according to Ahmed, was “icy and slippery,” and it was “still freezing, it was still ice.” Id. at PID 2327.
A-Qasemi’s deposition was also read to the jury. He stood behind Ahmed when the cable fell, and his testimony emphasized the cable’s weight: “Then [Ahmed] slipped, then the power cables go down and everywhere, he’s drop [sic] it from his hand because it’s too heavy and they hit [plaintiff.]” A-Qasemi Dep., R. 101-4, PID 2385. When asked whether he was tired at the time of the accident, A-Qasemi replied “[o]f course, 17 hours and we only got like a couple hours to sleep.” Id. at PID 2397.
There is no disputing that Ahmed dropped the cable. Athough he testified that the crew was in a hurry and wanted to go home, and that the deck was icy, he did not directly attribute his slipping and dropping the cable to any particular cause. Both Ahmed and A-Qasemi remarked that the cable was heavy, and A-Qasemi attributed Ahmed’s dropping the cable to its weight. Thus, as to Ahmed, the jury had the following facts: (1) when Ahmed slipped and dropped the cable, he had been working excessive hours in a physically demanding job, (2) he perceived the cable as heavy, (3) A-Qasemi perceived the cable’s drop as being caused by its weight, (4) A-Qasemi, who had been working similar hours to Ahmed, was tired because of the limited sleep the crew was getting, and (5) the deck had ice.[2]
*553 The majority correctly observes that awarding judgment as a matter of law to the party bearing the burden of proof should occur only in the rare case that the evidence “is overwhelming, leaving no room for the jury to draw significant inferences in favor of the [defendant].” Maj. Op. at 547 (citation omitted). A plaintiff seeking JMOL in the face of the jury’s verdict has a heavy burden because reasonable juries may examine evidence and come to a range of conclusions based on it. That includes conclusions that may surprise observers of the trial but that are reasonably supported by the evidence. In such cases, judges may not substitute their own judgment for that of the jury. And the fact that the evidence supports a particular verdict does not mean that it compels it.
Even under this high standard, however, the district court did not err in its legal determination that a reasonable jury, instructed on the featherweight causation burden and presented with the unrebutted facts, could not fail to find defendant liable. Here, the jury unreasonably found either that the workers were not fatigued, or that Ghaleb failed to establish that it is more likely than not that fatigue due to the excessive work hours was “even the slightest” cause of the accident. But just looking at the first event in the chain that led to the accident—Ahmed’s slipping and dropping the cable—shows that such jury findings are at odds with the direct and inferential evidence that the hours worked were extreme and the cable was heavy.
The majority suggests that the jury was free to conclude that Ahmed had a “chance slip on ice on an otherwise clean deck” that was unrelated to fatigue. Maj. Op. at 550. Assuming that Ahmed did slip because of ice, it does not follow that fatigue played no role in the accident. Accepting that ice was a factor, deck ice in cold weather, like the weight of the heavy cable, is a foreseeable work condition that requires balance, strength, and mental and physical responsiveness, all of which are compromised by fatigue. The majority finds the eounterfac-tual question “could a rested sailor have slipped or dropped a cable?” to be disposi-tive. Maj. Op. at 550. This framing focuses on whether accidents of this type can occur absent fatigue. No doubt they can, but that is not the question here. Rather, the question is whether any reasonable juror could fail to find that Ghaleb met his featherweight burden to show that fatigue was at least a slight cause of this accident. That rested sailors could also slip or drop a cable does not answer this question given that the sailors involved here had worked at a physical job for between 17 and 21 hours in the preceding 24. Further, absent evidence of an external force, the fact that properly rested sailors could also have slipped or dropped a cable does not undermine that an overtired and fatigued sailor who slips or drops a cable more likely than not failed to avoid doing so at least in slight part due to fatigue. The majority essentially posits that it is reasonable to find that each participant performed the cable maneuver with the same vigilance, steadiness, and strength he would have possessed had he not worked the excessive hours and not been fatigued. The failure to perform the cable maneuver with the vigilance, steadiness, and strength of a properly rested crew satisfied the requirement that fatigue had a role, however slight, in the accident.
*554 Because the district court’s JMOL analysis focused on Ghaleb’s fatigue, the majority focuses on the evidence that Ghaleb did not contribute to the accident. But the motion for JMOL did not exclusively focus on Ghaleb, and the ultimate question presented below and on appeal is whether a reasonable jury could conclude that Ghaleb failed to show that the grossly excessive work hours had even the slightest role in causing the accident.
Because I conclude that the grant of JMOL was proper, I would affirm.

. In addition, at the time of the accident, Chief Warren had worked 40 of the preceding 57 hours' and Al-Qasemi had worked 50.5 of the preceding 57 hours.

. At trial, no one disputed that there was some icing on the deck at the time of the accident, but there was disagreement on the overall condition. Chief Warren testified that there was "[a] little ice here and there. A little—you know, real thin, but there was a lot of sand out. There was a lot of salt out. There was no issues walking.” Chief Warren Trial Tr„ R.' 114, PID 3719. Plaintiff testified that there were at least several inches of ice all *553 over the deck, describing the condition as both "glassy” and "rocky.” Ghaleb Trial Tr., R. 109, PID 3090. In closing argument, plaintiff stated that Ahmed slipped on ice, Trial Tr., Vol. 10, at 1242, and the majority reasonably assumes this fact for purposes of the JMOL. See Maj. Op. at 550.